## DELORES GRIMES ET AL. v. HOUSING AUTHORITY OF THE CITY OF NEW HAVEN
### (SC 15518)

Berdon, Norcott, Katz, Palmer and McDonald, Js.

---

Argued May 1—officially released July 29, 1997

David N. Rosen, with whom was Stephen M. Pincus, for the appellants (plaintiffs).

Edward T. Krumeich, with whom, on the brief, was Miles F. McDonald, Jr., for the appellee (defendant).

*Opinion*

BERDON, J. This certified appeal raises two distinct issues: (1) whether the commencement of a class action tolls the statute of limitations for all individual claims by purported members of the class who would have been parties had the class not subsequently been limited; and (2) whether the statute of limitations set forth in General Statutes § 52-584,[1] was, under the circumstances of this case, tolled until the class finally was certified.

On March 11, 1988, the plaintiffs, Delores Grimes and her mother, Ethel Grimes, brought an action for damages for personal injuries they received on September 4, 1982, as a result of the alleged negligence of the defendant, the housing authority of the city of New Haven, due to its failure to provide hot water to the plaintiffs' residence at the Elm Haven Extension Apartments (Elm Haven) in New Haven. On February 21, 1992, the defendant filed a motion for summary judgment claiming that the plaintiffs' claims were barred by the two year period of limitations in § 52-584, because the plaintiffs' negligence action was not brought until more than five and one-half years after the alleged injuries were sustained. The trial court

[1] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

granted the defendant's motion for summary judgment and rendered judgment thereon, and the Appellate Court affirmed. *Grimes* v. *Housing Authority*, 42 Conn. App. 324, 679 A.2d 397 (1996). We granted the plaintiffs' petition for certification to appeal from the Appellate Court limited to the following issue: "Did the Appellate Court properly conclude that the class action statute of limitations tolling rule, as articulated in *American Pipe & Construction Co.* v. *Utah*, 414 U.S. 538 [94 S. Ct. 756, 38 L. Ed. 2d 713] (1973), and its progeny, did not apply so as to toll the statute of limitations applicable to the plaintiffs' class action claims?" *Grimes* v. *Housing Authority*, 239 Conn. 918, 682 A.2d 1000 (1996). We reverse the judgment of the Appellate Court.

The following undisputed facts are relevant to this appeal.[2] On December 10, 1981, six Elm Haven tenants filed a class action[3] on behalf of all Elm Haven tenants against the defendant, the owner and operator of the apartment complex, the basis of which formed this court's opinion in *Connelly* v. *Housing Authority*, 213 Conn. 354, 567 A.2d 1212 (1990). The plaintiffs in *Connelly* (*Connelly* plaintiffs) alleged that the defendant violated General Statutes § 47a-7 (a),[4] and the New

[2] Many of these facts are reproduced in *Connelly* v. *Housing Authority*, 213 Conn. 354, 567 A.2d 1212 (1990) (holding that trial court properly dismissed count two of class action complaint because municipal housing authority is exempted from liability under Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., when it leases subsidized units to low income tenants).

[3] Practice Book § 87 provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

[4] General Statutes § 47a-7 (a) provides in relevant part: "A landlord shall: (1) Comply with the requirements of chapter 368o and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever

Haven housing code[5] by failing to provide sufficient and stable heat and hot water for the tenants. In count one of the *Connelly* complaint, the tenants alleged that "[a]s a result of the insufficient and erratic heat and hot water, [the] plaintiffs and their families have been subjected to unsanitary and unsafe conditions which materially affect their health and well-being."[6] The *Connelly* plaintiffs sought relief in the form of a temporary injunction to compel the defendant to make immediate repairs to the heating and hot water systems, and in the form of compensatory damages for the named plaintiffs and for the class. The defendant did not seek revision of the complaint to require the plaintiffs to particularize the damages the lack of hot water caused.

On December 22, 1981, the trial court in *Connelly* ordered that this "action *provisionally* be allowed to be maintained as a class action for all of the tenants in the buildings of New Haven Housing Authority collectively known as Elm Haven High Rises" and issued a temporary injunction ordering the defendant to make immediate repairs to restore heat and hot water to the tenants' apartments. (Emphasis added.) The trial court did not set inclusive dates with respect to the tenants who were covered under the class.

is necessary to put and keep the premises in a fit and habitable condition . . . (4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances and elevators, supplied or required to be supplied by him . . . and (6) supply running water and reasonable amounts of hot water at all times and reasonable heat . . . ."

[5] Paragraph 300 of the New Haven housing code provides in pertinent part: "(e) The water-heating facilities necessary to provide the hot water required . . . shall be maintained in safe and good working condition, and shall be capable of heating water to such a temperature as to permit an adequate amount of water to be drawn at every required kitchen sink, lavatory basin, bathtub or shower at a temperature of not less than one hundred and twenty (120) degrees Fahrenheit . . . ."

[6] In count two of the complaint, the *Connelly* plaintiffs alleged that the defendant had violated the Connecticut Unfair Trade Practices Act, specifi-

On September 4, 1982, the plaintiffs in this case were injured as a result of the defendant's failure to provide hot water in violation of § 47a-7 (a) and paragraph 300 of the New Haven housing code. The plaintiffs alleged in their complaint that "[o]n September 4, [1982] Delores Grimes [a seven year old child] attempted to remove a pot containing hot water from the stove, in order to take it into the bathroom for the bath . . . . The hot water spilled onto [the] plaintiff Delores Grimes . . . [who] suffered serious permanent injuries, which have caused her and will continue to cause her pain, suffering, [and] distress, including: second and third degree burns covering approximately 22 percent of her total body area, including third degree burns over the anterior thighs, lower abdomen and vulva requiring multiple skin grafts and causing permanent scarring . . . . [The p]laintiff Ethel Grimes saw [the] plaintiff Delores Grimes seconds after she had been scalded, and as a result of seeing her daughter's injuries suffered and will continue to suffer anxiety and distress."

In January, 1987, the trial court in *Connelly* limited the class to those tenants who resided at Elm Haven between November 1, 1981, and March 31, 1982, and who lacked adequate heat and hot water in their apartments. The establishment of this time frame had the effect of excluding the plaintiffs here with respect to the injuries they sustained as a result of the incident on September 4, 1982. On March 11, 1988, the plaintiffs commenced this action, less than fifteen months after they were ousted from the *Connelly* class. On May 22, 1995, the trial court granted the defendant's motion for summary judgment on the ground that their claims were barred by the two year statute of limitations for personal injury actions in § 52-584. In granting the motion, the trial court concluded that the plaintiffs' claim for dam-

cally General Statutes § 42-110b (a), by renting apartments lacking adequate heat and hot water.

ages for personal injuries was not directly related to the cause of action asserted in the *Connelly* class action. The Appellate Court affirmed, concluding that "the claims raised in the class action that the defendant violated § 47a-7 . . . did not provide notice to the defendant that negligence claims were being made by the [named] plaintiff and her daughter for personal injuries . . . ." *Grimes* v. *Housing Authority*, supra, 42 Conn. App. 330. More specifically, the Appellate Court concluded that the statute of limitations was not tolled because the "tolling effect given to the timely prior filings in [*American Pipe & Construction Co.*] . . . depended heavily on the fact that those findings involved exactly the same cause of action subsequently asserted." (Citations omitted; internal quotation marks omitted.) Id., 329–30. We reverse the judgment of the Appellate Court.

I

The plaintiffs argue that the tolling rule for class actions announced by the United States Supreme Court in *American Pipe & Construction Co.* v. *Utah*, supra, 414 U.S. 538, should be adopted in Connecticut. In response, the defendant argues that because Connecticut class action rules are not identical to the federal rules, the *American Pipe & Construction Co.* rule should be rejected. Although this court previously has not had the occasion to consider this rule,[7] we now

---

[7] We note that the rule was relied upon in one Connecticut federal court opinion, and in one Superior Court opinion. See *West Haven School District* v. *Owens-Corning Fiberglass Corp.*, 721 F. Sup. 1547, 1555 (D. Conn. 1988) (applying *American Pipe & Construction Co.* to determine whether plaintiff's complaint arising under Connecticut law was filed within applicable three year statute of limitations period for products liability complaints); *Campbell* v. *Board of Education*, 36 Conn. Sup. 357, 364 n.6, 423 A.2d 900 (1980) ("*American Pipe & Construction Co.* v. *Utah*, [supra] 414 U.S. 538, established that the timeliness of the claims of class members is measured as of the date of the complaint, not the date that the class was certified. That is, the statute is tolled from the time the complaint was filed until the decision on class certification is made.").

adopt the rule set forth in *American Pipe & Construction Co.* with respect to the tolling of statute of limitations for the purported members of a class action.

In *American Pipe & Construction Co.*, the United States Supreme Court held that "the commencement of a class action *suspends the applicable statute of limitations as to all asserted members of the class* who would have been parties had the suit been permitted to continue as a class action." (Emphasis added.) Id., 554. In that case, the court approved the intervention of third parties on whose claims the statute of limitations would otherwise have run.[8]

If the statute of limitations is not tolled by the filing of the class action, "class members would not be able to rely on the existence of the suit to protect their rights. . . . A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations. The result would be a needless multiplicity of actions—precisely the situation that [rule 23 of the Federal Rules of Civil Procedure] and the tolling rule of [*American Pipe & Construction Co.*] were designed to avoid." *Crown, Cork & Seal Co.* v. *Parker,* 462 U.S. 345, 350–51, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983). Potential class members should not be induced to "file protective motions to intervene or to join [a class action] in the event that a class was later found unsuitable." *American Pipe & Construction Co.* v. *Utah,* supra, 414 U.S. 553.

---

[8] After the decision in *American Pipe & Construction Co.* was announced, several United States Circuit Courts of Appeals held that the tolling rule of that case applies only to asserted class members who seek to intervene after denial of class certification, and not to those who, like the plaintiffs here, file individual actions. Subsequently, in *Crown, Cork & Seal Co.* v. *Parker,* 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983), the Supreme Court held that the tolling rule in *American Pipe & Construction Co.* also protects asserted members of the class who file separate individual actions.

Connecticut's class action procedures in Practice Book § 86 et seq., like rule 23, are designed to increase efficiencies in civil litigation by encouraging multiple plaintiffs to join in one lawsuit. Many jurisdictions have recognized that in certain situations, class action suits are superior to individual lawsuits. See, e.g., *Deposit Guaranty National Bank of Jackson, Mississippi* v. *Roper*, 445 U.S. 326, 338–40, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980); *Bryan* v. *Amrep Corp.*, 429 F. Sup. 313, 318 (S.D.N.Y. 1977); *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 358 (E.D. Pa. 1976); *In re Ampicillin Antitrust Litigation*, 55 F.R.D. 269, 276 (D.D.C. 1972); *Philadelphia* v. *American Oil Co.*, 53 F.R.D. 45, 68 (D.N.J. 1971); *Minnesota* v. *United States Steel Corp.*, 44 F.R.D. 559, 572 (D. Minn 1968); *Campbell* v. *Board of Education*, 36 Conn. Sup. 357, 370, 423 A.2d 900 (1980). Class action suits: (1) promote judicial economy and efficiency; (2) protect defendants from inconsistent obligations; (3) protect the interests of absentee parties; and (4) provide access to judicial relief for small claimants. H. Newberg, Class Actions (3d Ed. 1992) § 1.06, p. 1-20; see also *United States Parole Commission* v. *Geraghty*, 445 U.S. 388, 402–403, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980).

We thus conclude that the *American Pipe & Construction Co.* tolling rule that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action as originally brought is the rule most consistent with Connecticut class action procedure. Accordingly, we adopt that rule.

## II

We next consider whether the *American Pipe & Construction Co.* rule applies to toll the commencement of the two year statute of limitations for the plaintiffs'

negligence action from September 3, 1982, to January, 1987, the date the *Connelly* class was certified.[9] That rule, consistent with the functional operation of a statute of limitations, is limited in order to ensure essential fairness to defendants by barring a plaintiff who "has slept on his rights." *Burnett* v. *New York Central R. Co.*, 380 U.S. 424, 428, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965). The rule is designed to prevent "surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." (Internal quotation marks omitted.) *American Pipe & Construction Co.* v. *Utah*, supra, 414 U.S. 554; *Cullen* v. *Margiotta*, 811 F.2d 698, 720 (2d Cir. 1987). Even if a plaintiff has a just claim, it is unjust not to put the defendant on notice within the limitations period. *Order of Railroad Telegraphers* v. *Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S. Ct. 582, 88 L. Ed. 788 (1944). This essential point, that the defendant be put on notice, is generally fulfilled where a prior class action alerts a defendant to preserve evidence that would be helpful in defending against a subsequent individual claim.

In order to satisfy the notice requirement, the *American Pipe & Construction Co.* rule can be applied only in those situations where the class action has "notifie[d] the defendants . . . of the substantive claims being brought against them [and] of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe & Construction Co.* v. *Utah*, supra, 414 U.S. 555. The defendant argues that

---

[9] Although the *Connelly* class did not fail for the original class as a whole —that is, all the residents of Elm Haven who lacked adequate heat and hot water—it did fail for the plaintiffs in this case because the class order, entered long after the date of the plaintiffs' injuries, limited the class to "those persons who resided at any time between November 1, 1981, and March 31, 1982, at Project 4-7 known as the Elm Haven High Rises and who lacked adequate heat or hot water in their respective apartments" and were injured during that period.

the first prong of the tolling rule was not met because the plaintiffs' cause of action is not the same as that in the class action, and the second prong was not met because the plaintiffs were not generally identified as potential class members in the *Connelly* complaint. We address each of these arguments in turn.

## A

The defendant argues that the *Connelly* complaint did not provide it with notice of the substantive claims filed by the plaintiffs here because the *Connelly* complaint did not involve "exactly the same cause of action subsequently asserted." *Johnson* v. *Railway Express Agency, Inc.*, 421 U.S. 454, 467, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975). Because the plaintiffs base their complaint on a negligence theory, and the *Connelly* plaintiffs base their complaint on statutory and code violations, the defendant concludes that the plaintiffs here have asserted a different cause of action. We disagree.

It is correct, as the plaintiffs concede, that the complaint in this case is predicated on a different legal theory. In this case, the plaintiffs seek damages based on the defendant's negligence. In *Connelly*, the plaintiffs sought damages and other relief based upon the defendant's continuing violation of § 47a-7 (a) and the New Haven housing code. The United States Court of Appeals for the Second Circuit addressed this precise issue in *Cullen* v. *Margiotta*, supra, 811 F.2d 719, when it held, "we do not regard the fact that the state court action was premised on different legal theories as a reason not to apply *American Pipe & Construction Co.* tolling to save the claims of class members who were not named plaintiffs in the state court action. It is not a flaw under that doctrine that the first action did not alert the defendant to have its lawyers research the

applicability of a particular statute or rule of common law . . . ."

In *Cullen,* the court reasoned that it would be inconsistent with the underlying policy of *American Pipe & Construction Co.* to decide that a change of legal theory amounts to a lack of notice that would bar application of the class action tolling rule. Such a limitation would "encourage and require absent class members to file protective motions to intervene and assert their new legal theories prior to class certification . . . ." (Citations omitted.) Id., 721. Connecticut's class action procedures, however, are designed to prevent the proliferation of lawsuits, and duplicative efforts and expenses. The extent of proliferation and duplication problems in this case is illustrated by the fact that every one of the hundreds of tenants of Elm Haven would have needed to file separate actions or motions to intervene to protect his or her rights in the event the trial court did not finally certify the *Connelly* action as a class action, or in the event the court excluded them from the certified class.

In both the *Connelly* class action and the present case, the facts relating to the defendant's conduct and the establishment of the breach of duty are the same. The *Connelly* plaintiffs and the plaintiffs in this case had a right to services, including reasonable amounts of hot water at all times, and reasonable heat. General Statutes § 47a-7 (a); paragraph 300 of the New Haven housing code. Both alleged that they suffered harm as a result of the defendant's continuing failure to provide sufficient and stable hot water for its tenants. Presumably, the plaintiffs will probably attempt to show at trial that the violation of statutorily prescribed duties under § 47a-7 (a) and paragraph 300 of the New Haven housing code constituted negligence per se.[10] Likewise, the *Con-*

[10] See *Gore* v. *People's Savings Bank,* 235 Conn. 360, 380, 665 A.2d 1341 (1995) ("[General Statutes] § 47a-8 imposes on landlords a standard of care

*nelly* plaintiffs will probably attempt to show that their injuries arose in part out of the failure to supply hot water pursuant to § 47a-7 (a) and paragraph 300 of the New Haven housing code. Because the plaintiffs did not present the defendant with an " 'entirely new and different factual situation' "; *Sharp* v. *Mitchell,* 209 Conn. 59, 71–72, 546 A.2d 846 (1988); the defendant was put on notice by the *Connelly* complaint of the nature of the evidence that would be needed at the plaintiffs' trial.

Our state law with respect to relation back theory supports the Second Circuit's view that changes in legal theories do not create different causes of action. *Cullen* v. *Margiotta,* supra, 811 F.2d 720–21. A long-standing principle in Connecticut is that "[a] right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action." *Pavelka* v. *St. Albert Society Branch No. 30,* 82 Conn. 146, 147, 72 A. 725 (1909). This court has also held for relation back purposes that "[a] change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff [as is alleged in this case] does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same . . . ." (Citations omitted; internal quotation marks omitted.) *Sharp* v. *Mitchell,* supra, 209 Conn. 71–72. Because the identity of the plaintiffs' cause of action remains sub-

the violation of which constitutes negligence per se"); *Panaroni* v. *Johnson,* 158 Conn. 92, 101–102, 256 A.2d 246 (1969) ("The violation of an ordinance enacted for the protection of the public is negligence as a matter of law. . . . From a review of the [New Haven] housing code in its entirety, it is apparent that the plaintiff is a member of the class for whose protection the housing code was enacted." [Citations omitted.]).

stantially the same as the *Connelly* cause of action arising out of the fact that the defendant failed to supply hot water, which it was obligated to supply, it is proper for the plaintiffs to amplify the allegations in the *Connelly* complaint.

The defendant also argues that the *Connelly* complaint did not put it on notice of the remedy being sought by the plaintiffs in this case. Notwithstanding the well settled law with respect to the broad construction of pleadings, the defendant asserts that the *Connelly* plaintiffs did not seek compensatory relief for the injuries caused by the defendant's alleged statutory and municipal code violations. We disagree.

"[T]he interpretation of pleadings is always a question of law for the court . . . ." (Citations omitted; internal quotation marks omitted.) *Geren* v. *Board of Education*, 36 Conn. App. 282, 290, 650 A.2d 616 (1994), cert. denied, 232 Conn. 907, 653 A.2d 194 (1995). "The modern trend, which is followed in Connecticut, is to construe pleadings broadly and *realistically*, rather than narrowly and technically." (Emphasis added; internal quotation marks omitted.) *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 587–88, 542 A.2d 1124 (1988). "As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient . . . ." (Internal quotation marks omitted.) *Edwards* v. *Tardif*, 240 Conn. 610, 620, 692 A.2d 1266 (1997).

Our review of the pleadings reveals that the *Connelly* plaintiffs sought more than mere injunctive relief for the defendant's alleged violation of § 47a-7 (a) and the New Haven housing code. Paragraph eight of count one of the *Connelly* complaint provides in part: "The named plaintiffs, in addition to maintaining this action on their own behalf, seek to maintain this action for injunctive

and ancillary relief on behalf of all tenants who reside in the buildings owned and operated by the defendant . . . ." More importantly, in the *Connelly* prayer for relief, the plaintiffs specifically claimed "compensatory damages for the named plaintiffs and for the class," the same relief claimed by the plaintiffs in this case. It has long been recognized that "[g]eneral damages, which are such as the law presumes from the wrong complained of, need not be specially pleaded, because the law presumes them . . . ." *Ives* v. *Carter*, 24 Conn. 392, 404 (1856). Indeed, personal injury damages are presumed from paragraph eighteen, count one, of the *Connelly* complaint which alleges: "As a result of the insufficient and erratic heat and hot water, plaintiffs and their families have been subjected to unsanitary and unsafe conditions which materially affect their health and well-being." It is incongruous then for the defendant to suggest that the *Connelly* plaintiffs did not seek compensatory damages when they specifically pleaded that class members had suffered some form of personal injury.

Furthermore, events subsequent to the filing of the *Connelly* complaint provided the defendant with further notice that some of the plaintiffs in the *Connelly* class would present damage claims for personal injuries resulting from the lack of hot water in their apartments. After counsel for the class stated at the preliminary injunction hearing on December 18, 1981, that his clients were concerned that children were being put in danger because families had to resort to boiling water in order to take baths, the defendant should have been able to foresee that one or more of the *Connelly* plaintiffs, like the named plaintiff here, would sustain severe burns from boiling hot water. The fact that the named plaintiff's previously described injuries "may be more or less extensive than that of some of the class members is not sufficient to make [their] claims 'markedly differ-

ent' from that of the class." *Campbell* v. *Board of Education*, supra, 36 Conn. Sup. 366.

Moreover, the defendant should not be heard to complain that it was not put on notice when it failed to take any action between December, 1981, and January, 1987, to narrow the broad pleadings in *Connelly* that sought damages for individual members of the class, who, as a result of the lack of hot water, were "subjected to . . . unsafe conditions which materially affect their health and well-being."[11] Simply put, it was the defendant who "has slept on [its] rights." *Burnett* v. *New York Central R. Co.*, supra, 380 U.S. 428.

Furthermore, in January, 1987, the defendant stipulated to a court-ordered class notice that informed potential class members: "You have a right to be included in this lawsuit if you . . . believe you suffered *damages* because the Housing Authority did not provide you with adequate heat or hot water . . . ." (Emphasis added.) The notice further stated that if the defendant was found liable for damages, each class member would have "a separate hearing to determine what *damages* would be awarded." (Emphasis added.) Thus, when the class was certified, the defendant recognized that individual class members would seek damages for personal injuries suffered as a result of its failure to provide adequate hot water.

We share the Appellate Court's concern that we must make "certain that [*American Pipe & Construction Co.*] is not abused by the assertion of claims that differ from those raised in the original class suit." *Grimes* v. *Housing Authority*, supra, 42 Conn. App. 330, citing

---

[11] Practice Book § 147 provides in pertinent part: "Whenever any party desires to obtain (1) a more complete or particular statement of the allegations of an adverse party's pleading, or . . . (3) separation of causes of action which may be united in one complaint when they are improperly combined in one count . . . the party desiring any such amendment in an adverse party's pleading may file a timely request to revise that pleading."

*Crown, Cork & Seal Co.* v. *Parker*, supra, 462 U.S. 355 (Powell, J., concurring). Nevertheless, we conclude that the *Connelly* complaint, construed broadly and realistically, rather than narrowly and technically; *Beaudoin* v. *Town Oil Co.*, supra, 207 Conn. 587–88; provided the defendant with adequate notice that a potential class member could make damage claims for a serious personal injury resulting from the defendant's continuing failure to provide sufficient hot water. Subsequent events should have made it sufficiently clear for the defendant.

### B

The defendant also claims that the *Connelly* complaint never put it on notice that the plaintiffs here were potential class members because the complaint did not refer to residents of the plaintiffs' apartment building. It is evident from the record that the omission of the street address of the plaintiffs' apartment, 250 Ashmun Street, from the complaint, does not alter the fact that the plaintiffs were tenants of one of the Elm Haven apartments generally referred to in the complaint. Moreover, the trial court issued an oral order at the hearing on the temporary injunction in *Connelly* that provisionally included tenants of the building at 250 Ashmun Street as class members without limitation.[12] From the outset, the defendant had the essential information necessary to determine that the plaintiffs were potential class members—a list of the names and addresses of all tenants of Elm Haven, including the plaintiffs. Furthermore, the defendant had the essential information

[12] The trial court's order included the following language: "Although 250 Ashmun Street has not been includ[ed] specifically in the pleadings [by address], I . . . can't include five buildings without including the sixth. I've heard the parties, I've heard the evidence and I'm going to order that this action provisionally be allowed to be maintained as a class action for all of the tenants in the building of New Haven Housing Authority collectively known as Elm Haven Extension . . . ."

necessary to know the particular identity of the plaintiffs after a Yale-New Haven Hospital social worker informed the defendant of the nature and cause of the named plaintiff's injuries as early as September 14, 1982, ten days after she was seriously injured by the scalding water.[13]

The defendant further argues that the plaintiffs were never members of the *Connelly* class because their injuries occurred nine months after the *Connelly* complaint was filed. Its argument is premised on the mistaken belief that the *Connelly* plaintiffs limited their allegations to statutory and ordinance violations fixed in time. Contrary to the defendant's belief, the *Connelly* complaint attempted to address present and future harm caused by the defendant's continuing failure to supply sufficient hot water. Specifically, the *Connelly* complaint stated that the defendant had failed, in violation of § 47a-7 (a), and the New Haven housing code, to make necessary repairs to the hot water systems at the Elm Haven apartments. The complaint further alleged that by *remaining* in a state of disrepair, the defendant's buildings posed risks to the health and well-being of class members. Finally, the complaint alleged in count two that by *continuing* to rent apartments that lack sufficient heat and hot water to the plaintiffs, the defendant was violating General Statutes § 42-110b (a).[14] Thus, even though the plaintiffs' injuries were sustained nine months after the *Connelly* complaint was filed, their injuries arose out of the same group of

---

[13] Pat McFarland, a social worker, in a letter dated September 14, 1982, stated: "On September 7, 1982, Delores Grimes received second degree burns to 15 [percent] of her body. Delores is a 10 year old girl who was taking water from the stove to bathe. The reason the family was heating water was because as Mrs. Ethel Grimes, Delores' mother related to me, the family had been without hot water that entire day, and has experienced subsequent periods without hot water. Mrs. Grimes stated this problem had been reported and was supposed to be taken care of."

[14] See footnote 6 of this opinion.

facts as alleged in the *Connelly* complaint, namely, the defendant's ongoing violations of § 47a-7 (a) and the New Haven housing code.

Finally, tolling the statute of limitations in this case is consistent with the rationale of the rule in *American Pipe & Construction Co.* The court in that case explained that rule 23 of the Federal Rules of Civil Procedure is not designed to limit class action representation to those who are active participants in the litigation, or to those who are aware of the proceedings. *American Pipe & Construction Co.* v. *Utah*, supra, 414 U.S. 551–52. During the pendency of the trial court's determination whether to certify the class, "potential class members are mere passive beneficiaries of the action brought in their behalf." Id., 552. Although not necessary under *American Pipe & Construction Co.*, Ethel Grimes considered herself a class member, and looked to the *Connelly* action to protect her rights. She testified at her deposition that she did not file an individual action after her child Delores was injured because she was aware of the *Connelly* action and believed she had "signed up" to be a class member.[15] As potential class members, the plaintiffs had no "duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case," until the "existence and limits of the class have been established and notice of mem-

---

[15] At her deposition, Ethel Grimes responded to questions by the defendant's counsel as follows:

"Q: Why didn't you sue earlier relating to the accident? Why did you wait so long?

"A. Well, I had signed, you know—I thought I was already signed up at the time.

"Q. What do you mean signed up?

"A. You know, as far as being, you know, suing.

"Q. Did you have any discussions with any of the attorneys involved in the tenants' lawsuit about the accident?

"A. Yes, I did."

bership has been sent." Id. Once the class was certified in January, 1987, the plaintiffs did not "sleep on their rights," but, rather, exercised their responsibility by filing their complaint in a timely fashion.

The judgment of the Appellate Court is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion NORCOTT, KATZ and PALMER, Js., concurred.

MCDONALD, J., dissenting. I respectfully dissent for the reasons set forth in the thoughtful and comprehensive opinion of the Appellate Court. See *Grimes* v. *Housing Authority*, 42 Conn. App. 324, 679 A.2d 397 (1996).