UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-2036
(CA-95-876-3)

Jeannette Wade, et al,

Plaintiffs - Appellants,

versus

Danek Medical, Inc., et al,

Defendants - Appellees.

O R D E R

The court amends its opinion filed July 2, 1999, as follows:

On page 5, first paragraph, lines 8-10 -- the last sentence is corrected to read: "On February 22, 1995, the district court denied class certification in <u>Zampirri</u>; on July 13, 1995, it did likewise in <u>Brown</u>."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEANNETTE WADE; EDWIN WADE,
<u>Plaintiffs-Appellants,</u>

v.

DANEK MEDICAL, INCORPORATED;
SOFAMOR, INCORPORATED; SOFAMOR-
DANEK GROUP, INCORPORATED;
SOFAMOR, S.N.C.; WARSAW
ORTHOPEDIC, INCORPORATED,
<u>Defendants-Appellees,</u>

and

AMERICAN ACADEMY OF ORTHOPEDIC
SURGEONS; NORTH AMERICAN SPINE
SOCIETY; SCOLIOSIS RESEARCH

SOCIETY; ZIMMER, INCORPORATED;
DANEK CAPITAL CORPORATION; DANEK
SALES CORPORATION; BUCKMAN
COMPANY, INCORPORATED; NOREX
USA, INCORPORATED; NATIONAL
MEDICAL SPECIALTY, INCORPORATED;
STUART, INCORPORATED; EDUARDO
LUQUE; PAUL MCAFEE; ROGER P.
JACKSON; DAVID BRADFORD; YVES
COTREL; JEAN DUBOUSSET; HARRY
SHUFFLEBARGER; R. GEOFFREY
WILBER; CHARLES E. JOHNSTON, II;
RICHARD ASHMAN, PH.D.; GARY
LOWERY; GEORGE RAPP; ENSOR
TRANSFELDT; HANSEN YUAN; JOHN A.

No. 98-2036

HERRING; JOHN P. BARRETT; THOMAS WHITECLOUD, III; THOMAS A. ZDEBLICK; TEXAS SCOTTISH RITE HOSPITAL FOR CRIPPLED CHILDREN; GICD-USA; GROUPE INTERNATIONAL COTRELDUBOUSSET; ACROMED CORPORATION, CHARTER NUMBER 614043; ACROMED CORPORATION, CHARTER NUMBER 816942; ACROMED RESEARCH AND DEVELOPMENT CORPORATION; ACROMED SPINE RESEARCH FOUNDATION, INCORPORATED; ACROMED INCORPORATED, CHARTER NUMBER 811415; ACROMED INCORPORATED, CHARTER NUMBER 816943; ACROMED HOLDING CORPORATION, CHARTER NUMBER 811416; ACE MEDICAL COMPANY; ADVANCED SPINE FIXATION SYSTEMS, INCORPORATED; CROSS MEDICAL PRODUCTS; DEPUY-MOTECH, INCORPORATED; HOWMEDICA, INCORPORATED AND ITS PARENT PFIZER, INCORPORATED; SCIENTIFIC SPINAL; SMITH & NEPHEW RICHARDS, INCORPORATED; SYNTHES, U.S.A.; SYNTHES, Incorporated; SYNTHES NORTH AMERICA, INCORPORATED; SYNTHES, A.G. CHUR; ADVANCED BIOSEARCH ASSOCIATES; SPINAL SCIENCE ADVANCEMENT FOUNDATION; HEALTH INDUSTRY MANUFACTURER'S ASSOCIATION; ORTHOPEDIC SURGICAL MANUFACTURERS ASSOCIATION; SPINAL IMPLANT MANUFACTURERS GROUP;

2

YOUNGWOOD MEDICAL SPECIALTIES,
INCORPORATED; HANSEN YUAN, M.D.;
RICHARD W. TREHARNE, Ph.D;
ERMON R. PICKARD; STUART MEDICAL
INCORPORATED, formerly known as
Stuart Drug and Surgical Supply,
Incorporated,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-95-876-3)

Argued: April 7, 1999

Decided: July 2, 1999

Before ERVIN, LUTTIG, and TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Ervin and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Thomas J. Byrne, CUMMINGS, CUMMINGS &
DUDENHEFER, New Orleans, Louisiana, for Appellants. Gary
Joseph Spahn, MAYS & VALENTINE, L.L.P., Richmond, Virginia,
for Appellees. **ON BRIEF:** John J. Cummings, III, Frank C. Duden-
hefer, Jr., CUMMINGS, CUMMINGS & DUDENHEFER, New
Orleans, Louisiana; William C. Lane, MASSELLI & LANE, P.C.,
Arlington, Virginia, for Appellants. Dabney J. Carr, IV, MAYS &
VALENTINE, L.L.P., Richmond, Virginia; George Lehner, PEPPER
HAMILTON, L.L.P., Washington, D.C., for Appellees.

**OPINION**

LUTTIG, Circuit Judge:

Jeannette and Edwin Wade appeal the district court's decision to grant summary judgment against them in this diversity action on the ground that the statute of limitations on their action was not equitably tolled during the pendency of federal class actions against some of the same defendants. Because we conclude that Virginia lacks an equitable tolling rule, and that Virginia law on equitable tolling would govern in this case, we affirm.

I.

In 1985, appellant Jeannette Wade began to experience back pain. In the following years, she underwent back surgery twice, but continued to suffer pain. Consequently, on October 26, 1992, Wade again underwent surgery, this time to fuse two vertebrae in her spine. During the course of that surgery, doctors implanted a pedicle screw spinal fixation device, manufactured by appellees Sofamor-Danek Group, Incorporated, and its subsidiaries (collectively "Danek"). The purpose of this device was essentially to act as an internal splint, thereby facilitating the fusion of the vertebrae. Although the use of the device for this purpose appears to have been common at the time of Wade's surgery, this use was not listed on the label for the device approved by the Food and Drug Administration.

The fusion surgery was a success; however, immediately after the surgery, Wade began experiencing worsened pain in her back and leg. She reported this pain to her doctors by no later than April 1993. In addition, Wade subsequently developed arachnoiditis, which is an inflammation of the membrane covering the spinal cord, and incontinence. After consulting with a number of doctors, Wade had the spinal fixation device removed on April 26, 1995.

Meanwhile, on December 30, 1993, a federal class action was filed in the United States District Court for the Eastern District of Pennsylvania against various pedicle screw spinal fixation device manufacturers, including Danek. See Zampirri v. AcroMed, No. CA-93-7074

(E.D. Pa. filed Dec. 30, 1993). On April 14, 1994, a similar class action was filed in the United States District Court for the Eastern District of Louisiana. See Brown v. AcroMed, No. 94-1236 (E.D. La. filed April 14, 1994). Wade and her husband, appellant Edwin Wade, were putative, but not named, class members in each of the actions. Pursuant to the multidistrict litigation statute, the Brown class action was transferred to the Eastern District of Pennsylvania, where it was consolidated with the Zampirri class action. On February 22, 1995, the district court denied class certification in Zampirri; on July 13, 1995, it did likewise in Brown.

On October 23, 1995, appellants filed this action in the United States District Court for the Eastern District of Virginia against Danek and a number of other manufacturers, individuals, and medical associations, alleging negligence, strict liability, conspiracy, and a host of other state law claims. The case was briefly transferred to the Eastern District of Pennsylvania, where the class actions had been consolidated, before being remanded to the Eastern District of Virginia. After the remand, defendants moved for summary judgment on the ground that Virginia's two-year statute of limitations had run. See Va. Code § 8.01-243(A) (1998). On May 13, 1998, the district court granted defendants' motions, rejecting plaintiffs' argument that the statute of limitations should be equitably tolled for the period during which the federal class actions were pending. See Wade v. Danek Med., Inc., 5 F. Supp. 2d 379, 384 (E.D. Va. 1998). Plaintiffs now bring this appeal against Danek only, challenging the district court's decision to grant summary judgment and also its decision to deny their motion for reconsideration.

II.

Appellants first contend that, even if the district court correctly concluded that the statute of limitations on their action should not be equitably tolled during the pendency of the federal class actions, the limitations period had nevertheless not lapsed by the time they filed their action.[1] Appellants' primary argument is that, although Wade's

_____

[1] At oral argument, counsel for appellants seemed to concede that the limitations period would have lapsed in the absence of an equitable tolling rule. Because appellants dispute this issue in their brief, however, we briefly address it here.

5

initial injury -- namely, her worsening pain -- occurred immediately after the surgery, and therefore more than two years before their action was filed, Wade suffered a number of subsequent injuries -- such as her incontinence -- that did not arise until less than two years before their action was filed. This argument, however, is squarely foreclosed by Virginia law. In Virginia, "an injury is deemed to occur, and the statute of limitations period begins to run, whenever any injury, however slight, is caused by the negligent act, even though additional or more severe injury or damage may be subsequently sustained as a result of the negligent act." St. George v. Pariser, 253 Va. 329, 332 (1997); see also, e.g., Joyce v. A.C. and S., Inc., 785 F.2d 1200, 1205 (4th Cir. 1986) ("[U]nder Virginia law[,] the statute of limitations does not accrue separately for each set of damages which results from a wrongful act."); Caudill v. Wise Rambler, Inc., 210 Va. 11, 14-15 (1969) ("[T]he running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.").

Appellants briefly make two other points in support of their argument that the limitations period had not run on their right of action, neither of them availing. First, appellants contend that, because Wade had suffered similar back pain even before the implantation of the spinal fixation device, their right of action should accrue not at the time at which the device was implanted, but rather at the time at which the worsening of Wade's pain was specifically linked to the implantation of the device. It is well settled in Virginia, however, that the limitations period begins running at the time of the initial injury, not at the time of diagnosis or discovery. See Va. Code§ 8.01-230 (1998) (stating that limitations period runs "from the date the injury is sustained . . . and not when the resulting damage is discovered"); Locke v. Johns-Mansville Corp., 221 Va. 951, 959 (1981) (rejecting both date of diagnosis and date of symptoms as accrual date in favor of date of injury, even if symptoms do not manifest themselves for "weeks, months or even years"). Because, as Wade herself admitted, Wade had both experienced her symptoms and communicated them to her doctors well over two years before the action was filed, it would have been logically impossible for her injury to have occurred less than two years before the action was filed.**2**

_____

**2** Virginia has enacted an exception to its general rule that the limitations period begins running at the time of injury in the specific context

6

Second, appellants contend, albeit baldly, that appellees failed to bear their burden of proving when Wade's injury occurred. In view of Wade's own admissions regarding the time at which her symptoms arose and the time at which she communicated them to her doctors, however, we agree with the district court that appellants amply met their burden of demonstrating when Wade's injury occurred "with a reasonable degree of medical certainty." Locke, 221 Va. at 959. We therefore conclude that, in the absence of an equitable tolling rule, appellants' action would be barred by Virginia's two-year statute of limitations.

## III.

Because appellants' action would otherwise be barred by Virginia's statute of limitations, we are squarely presented with the question whether the statute of limitations in appellants' action should be equitably tolled during the pendency of the Zampirri and Brown federal class actions. In answering this question, we must, because this is a diversity action, determine whether to look to federal or state law as a source for any equitable tolling rule.[3] On the one hand, the Supreme Court has held that the statute of limitations in a subsequently filed federal question action should be equitably tolled during the pendency of a federal class action. See American Pipe and Constr. Co. v. Utah, 414 U.S. 538, 552-53 (1974) (applying equitable tolling rule to subsequent motion to intervene in action after denial of class certification in that action); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54 (1983) (extending equitable tolling rule of American Pipe to subsequent independent individual action after denial of class certification in separate action). On the other hand, Virginia has no statute providing that the statute of limitations in a subsequently filed state action

_____

of product-liability actions involving recipients of breast implants, stating that the limitations period in those cases does not begin running until the recipient communicates her symptoms to her doctor. See Va. Code § 8.01-249.7 (1998).

[3] At oral argument, and in its reply brief, counsel for appellants seemed to concede that state law would apply. Again, however, because appellants dispute this issue at some length in their original brief, we address it here.

should be equitably tolled during the pendency of either a state or a federal class action, and no Virginia court has ever applied such a rule.**4**

As a threshold matter, appellants contend that this apparent conflict between the federal and state rules on equitable tolling is illusory because the Virginia Supreme Court would apply an equitable tolling rule if presented with the issue. We disagree.

In predicting whether the Virginia Supreme Court would apply an equitable tolling rule, we are mindful of the general principle that, "[i]n trying to determine how the highest state court would interpret the law, we should not create or expand that State's public policy." Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 260 (4th Cir.), cert. dismissed, 119 S. Ct. 634 (1998); see also St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995) ("[T]he federal courts in diversity cases, whose function it is to ascertain and apply the law of a State as it exists, should not create or expand that State's public policy.").

In the absence of any relevant Virginia law, we naturally look to the practices of other states in predicting how the Virginia Supreme Court would rule. A number of other states -- some looking to the Supreme Court's decision in American Pipe-- have adopted a rule allowing equitable tolling during the pendency of a class action in their own courts. See, e.g., First Baptist Church of Citronelle v. Citronelle-Mobile Gathering, Inc., 409 So. 2d 727, 730 (Ala. 1981); Rosenthal v. Dean Witter Reynolds, Inc., 883 P.2d 522, 531-32 (Colo. Ct. App. 1994), aff'd in part and rev'd in part on other grounds, 908 P.2d 1095 (Colo. 1995); Grimes v. Housing Auth. of the City of New Haven, 698 A.2d 302, 306 (Ct. 1997); Levi v. University of Hawaii,

_____

**4** Virginia does have a statute providing for tolling of the limitations period in certain other situations. See Va. Code § 8.01-229 (1998). Further, the Virginia Supreme Court has stated as follows: "In light of the policy that surrounds statutes of limitation, the bar of such statutes should not be lifted unless the legislature makes unmistakably clear that such is to occur in a given case. Where there exists any doubt, it should be resolved in favor of the operation of the statute of limitations." See Burns v. Board of Supervisors, 227 Va. 354, 359 (1984) (emphasis added).

8

679 P.2d 129, 132 (Hawaii 1984); <u>Pope</u> v. <u>Intermountain Gas Co.</u>, 646 P.2d 988, 1010 n.28 (Idaho 1982); <u>Lucas</u> v. <u>Pioneer, Inc.</u>, 256 N.W.2d 167, 180 (Iowa 1977); <u>Municipal Auth. of Westmoreland County</u> v. <u>Moffat</u>, 670 A.2d 747, 749 (Pa. Commonw. Ct. 1996); <u>American Tierra Corp.</u> v. <u>City of W. Jordan</u>, 840 P.2d 757, 761-62 (Utah 1992). It is not particularly surprising that so many states have adopted such a rule, for a state has a similar interest in applying equitable tolling during the pendency of a class action in its own courts as does the federal government in applying equitable tolling during the pendency of a class action in federal court: namely, serving the purpose of the state's class action rule (many of which are identical, or virtually identical, to Federal Rule 23) by deterring "protective" filings of potentially redundant individual suits during the pendency of a class action that may ultimately resolve those suits, and thereby promoting the efficiency and economy of the state's class action procedures.

This case, however, presents a slightly different question: namely, whether a state court would engage in equitable tolling during the pendency of a class action in another court -- in this case, a federal court in another jurisdiction. Although a number of states have allowed equitable tolling for class actions in their own courts, only a very few have even addressed the question of "cross-jurisdictional" equitable tolling, much less allowed such tolling. <u>See Portwood</u> v. <u>Ford Motor Co.</u>, 701 N.E.2d 1102, 1104-05 (Ill. 1998) (refusing to allow cross-jurisdictional equitable tolling), <u>cert. denied</u>, 119 S. Ct. 1046 (1999);**5** <u>Bell</u> v. <u>Showa Denko K.K.</u>, 899 S.W.2d 749, 757-58 (Tex. Ct. App. 1995) (same in the context of a personal-injury class action);**6** <u>but see Staub</u> v. <u>Eastman Kodak Co.</u>, 1999 WL 183796, at *12 (N.J. Super. Ct. App. Div. April 5, 1999) (allowing cross-jurisdictional equitable tolling, citing prior state tolling cases); <u>Maestas</u> v. <u>Sofamor Danek Group, Inc.</u>, 1999 WL 74212, at *5 (Tenn. Ct. App. Feb. 16, 1999) (same in pedicle screw case, citing prior state tolling case); <u>Lee</u> v. <u>Grand Rapids Bd. of Educ.</u>, 384 N.W.2d 165, 168

_____

**5** Illinois courts do allow intrajurisdictional equitable tolling, however. <u>See Steinberg</u> v. <u>Chicago Med. School</u>, 371 N.E.2d 634, 645 (Ill. 1977).

**6** Texas courts, too, have recognized intrajurisdictional equitable tolling. <u>See Grant</u> v. <u>Austin Bridge Constr. Co.</u>, 725 S.W.2d 366, 370 (Tex. Ct. App. 1987).

9

(Mich. Ct. App. 1986) (same, without elaboration); <u>Hyatt Corp.</u> v. <u>Occidental Fire & Cas. Co.</u>, 801 S.W.2d 382, 389 (Mo. Ct. App. 1990) (same, again without elaboration); <u>see also In re "Agent Orange" Prod. Liab. Litig.</u>, 818 F.2d 210, 213 (2d Cir. 1987) (refusing to read cross-jurisdictional equitable tolling rule into Hawaii law); <u>Barela</u> v. <u>Showa Denko K.K.</u>, 1996 WL 316544, at *4 (D.N.M. 1996) (same for New Mexico law).

Having considered these cases -- most of which do not discuss the issue in any detail -- we conclude that the Virginia Supreme Court would not adopt a cross-jurisdictional equitable tolling rule. First, and most importantly, the Commonwealth of Virginia simply has no interest, except perhaps out of comity, in furthering the efficiency and economy of the class action procedures of another jurisdiction, whether those of the federal courts or those of another state.[7] Second, if Virginia were to adopt a cross-jurisdictional tolling rule, Virginia would be faced with a flood of subsequent filings once a class action in another forum is dismissed, as forum-shopping plaintiffs from across the country rush into the Virginia courts to take advantage of its cross-jurisdictional tolling rule, a rule that would be shared by only a few other states. <u>See Portwood</u>, 701 N.E.2d at 1104. Although, in the absence of a cross-jurisdictional tolling rule, in-state plaintiffs would engage in "protective" filing before the statute of limitations expires, thus leading to some increase in the amount of litigation,[8] any such increase would presumably be smaller than the increase in filings that would result from a cross-jurisdictional tolling rule, because out-of-state plaintiffs would simply engage in "protective" filing in their own states' courts (provided their states lacked cross-jurisdictional tolling rules themselves). <u>See id</u>. at 1105. Third, if Virginia were to allow cross-jurisdictional tolling, it would render the Virginia limitations period effectively dependent on the resolution of claims in other jurisdictions, with the length of the limitations period varying depending on the efficiency (or inefficiency) of courts in

_____

[7] Indeed, Virginia itself has no class action provision analogous to Federal Rule 23.

[8] Of course, once a "protective" filing has been made, the state court could always stay proceedings in that action pending the resolution of the class action in the other jurisdiction, thus minimizing the effect of any duplicative litigation.

10

those jurisdictions. See id. at 1104. And Virginia has historically resisted such dependency. For these reasons, we reject appellants' argument that the Virginia Supreme Court would adopt a cross-jurisdictional equitable tolling rule.**9**

IV.

Having concluded that Virginia lacks an equitable tolling rule, and that the Virginia Supreme Court would not adopt such a rule, we are faced with a square conflict between the federal rule in favor of equitable tolling, on the one hand, and the state rule against equitable tolling, on the other. We therefore must determine whether we, as a federal court sitting in diversity, should resort to federal or state law on equitable tolling under Erie and its progeny. The Supreme Court has never directly addressed this question. However, not long after Erie, the Court held that, at least in cases (like this one) in which the choice of state or federal rule would be "outcome-determinative," it

_____

**9** In addition, we believe that, even were the Virginia Supreme Court to adopt a cross-jurisdictional tolling more generally, it would not apply such a rule in a case such as this one, at least as against many of the defendants not named in this appeal, because the federal class actions did not place those defendants on sufficient notice of appellants' claims. One of the purposes of a statute of limitations is to put a defendant on notice of the claims against him within the specified period. See, e.g., Order of R.R. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944). For an equitable tolling rule to comport with this purpose, the class action plaintiff must "notif[y] the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." American Pipe, 414 U.S. at 555. At least two state courts have concluded that equitable tolling is inappropriate when notice has not been provided. See Jolly v. Eli Lilly & Co., 751 P.2d 923, 936-38 (Cal. 1988) (en banc); Bell, 899 S.W.2d at 758. In this case, many of the defendants, if not a majority, were not named in the federal class actions, as counsel for appellants conceded at oral argument, and therefore those defendants did not receive sufficient notice within the limitations period to justify equitable tolling. See Adams, 7 F.3d at 719. In addition, it appears that some of the types of claims in appellants' action, notably the conspiracy claims, were not brought in the federal class actions, although the claims may have been sufficiently similar to serve as notice.

would look to state law in order to determine the governing statute of limitations. See Guaranty Trust Co. v. York, 326 U.S. 99, 109-12 (1945).**10** Several decades later, the Court extended that holding, reasoning that it would look to state law not just for the applicable statute of limitations, but also for any rule, such as a service rule, that constituted "an integral part of the state statute of limitations." Walker v. Armco Steel Corp., 446 U.S. 740, 753 (1980); see also Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 534 (1949) (applying similar state service rule). Finally, and perhaps most critically for our current inquiry, in two cases in which the subsequent action was a federal question action based on § 1983, which lacks a specific limitations period and therefore "borrows" its limitations period from state law, the Court looked to state law for the applicable equitable tolling rule. See Chardon v. Soto, 462 U.S. 650, 660-62 (1983) (applying state rule of equitable tolling during pendency of federal class action); Board of Regents v. Tomanio, 446 U.S. 478, 484-86 (1980) (applying state rule against equitable tolling during pendency of state individual action).

Although the subsequent actions in Tomanio and Chardon were federal question actions, rather than diversity actions, we read those cases, together with Walker, to stand for the proposition that, in any case in which a state statute of limitations applies-- whether because it is "borrowed" in a federal question action or because it applies under Erie in a diversity action -- the state's accompanying rule regarding equitable tolling should also apply. Most of the other federal courts to have considered the issue in the diversity context have

_____

**10** In Hanna v. Plumer , 380 U.S. 460 (1965), the Supreme Court suggested that, in cases in which the choice of federal or state rule was "outcome-determinative" -- at least in those cases in which the federal rule was judicially created -- the question whether to apply federal or state law additionally turned on whether the simultaneous application of the federal rule in diversity actions and the state rule in state court actions would lead to forum shopping or the inequitable administration of the laws -- the twin evils that the Erie  rule was designed to avoid. See id. at 468. In this case, however, there can be no doubt that the application of a more generous equitable tolling in diversity actions than in state court actions would lead at least to forum shopping, and possibly also to inequitable administration of the laws.

12

so ruled. See, e.g., "Agent Orange", 818 F.2d at 213 (reasoning that, because state law did not provide for equitable tolling, "it is doubtful that either American Pipe or Crown, Cork can be treated as applicable precedent," and citing Chardon and Tomanio); In re Norplant Contraceptive Prods. Liab. Litig., 173 F.R.D. 185, 188 n.10 (E.D. Tex. 1997) (holding that "application of an equitable tolling rule in a diversity action is an issue of state law"); West Haven School Dist. v. Owens-Corning Fiberglas Corp., 721 F. Supp. 1547, 1554 (D. Conn. 1988) (noting that "state tolling law controls" and, citing Tomanio, that "the question must be resolved by reference to state, not federal, tolling law"); cf. Carter v. Washington Metro. Area Transit Auth., 764 F.2d 854, 855 (D.C. Cir. 1985) (reasoning that "[u]nder the Erie doctrine . . . the relevant state law controls whether, in a statute-of-limitations case before a federal court on diversity jurisdiction, a pending [individual action] tolls the statute of limitations").**11**

_____

**11** A minority of the federal courts to have considered the issue whether to apply a federal or state equitable tolling rule have done so by weighing the importance of the policy implicated by the federal rule against the importance of the policy of applying the state rule uniformly. See Vaught v. Showa Denko K.K., 107 F.3d 1137, 1147 (5th Cir.) (holding that "federal interest" in American Pipe rule "does not trump the Texas tolling rule"), cert. denied, 522 U.S. 817 (1997); Barela, 1996 WL 316544, at *4 (rejecting argument that "any overriding federal interest in class actions mandates application of American Pipe in diversity cases in the absence of applicable state tolling law"); but see Adams Pub. Sch. Dist. v. Asbestos Corp., 7 F.3d 717, 719 (8th Cir. 1993) (reasoning that "federal interest" in American Pipe rule was "sufficiently strong to justify tolling in a diversity case when the state law provides no relief"). In balancing the relative interests of the federal and state systems in applying their respective rules, those courts have relied, either explicitly or implicitly, on the Supreme Court's decision in Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525 (1958). Even assuming that Byrd retains vitality in the wake of the Supreme Court's subsequent decision in Hanna, which appeared to revert to a modified version of the York "outcome-determinative" test in cases in which the federal rule was judicially created, we agree with the Vaught and Barela courts that any federal interest in applying the American Pipe rule -- namely, in reducing potentially redundant individual filings -- is insufficiently strong to justify displacing a state rule to the contrary. We therefore conclude that, even under the test outlined in Byrd, Virginia's rule against equitable tolling, rather than the federal rule articulated in American Pipe, would apply.

13

Appellants make two further arguments that the federal equitable tolling rule should apply in their case, both of which we reject. First, appellants contend that the federal equitable tolling rule established in American Pipe was based on, and thus implicitly inheres in, Rule 23, the federal rule governing class actions, and therefore that Rule 23 directly conflicts with, and thus trumps, any contrary Virginia rule against equitable tolling. See Hanna, 380 U.S. at 463-64 (holding that validly enacted federal rule of civil procedure trumps directly conflicting state rule).**12** However, the Supreme Court refused to accept a virtually identical argument in Walker. There, the Court rejected the argument that Rule 3, the federal rule stating that a civil action commences at the time at which the complaint is filed, implicitly contains a rule tolling the statute of limitations until service is effected and therefore trumps a conflicting state rule requiring service within a specified period after the statute of limitations has run. See Walker, 446 U.S. at 750-51. Likewise, in this case, we reject the argument that Rule 23 -- which on its face merely establishes the procedures for pursuing a class action in the federal courts -- implicitly contains an equitable tolling rule and thereby trumps a state rule against such tolling.**13** Because a "direct conflict between the Federal Rule and the state law" cannot exist "in the absence of a federal rule directly on point," the Hanna rule cannot apply. Id.; see also id. at 750 n.9 ("The Federal Rules should be given their plain meaning. If a direct collision with state law arises from that plain meaning, then the analysis developed in Hanna v. Plumer applies.").

Second, appellants contend that the application of the federal equitable tolling rule is mandated by our prior decision in Atkins v. Schmutz Mfg. Co., 435 F.2d 527 (4th Cir. 1970) (en banc). In Atkins,

_____

**12** Then-Justice Rehnquist appears to have taken the view that the rule of American Pipe implicitly inhered in Rule 23 in his dissent in Chardon. See Chardon, 462 U.S. at 667-68 (Rehnquist, J., dissenting) ("If the law of [a] particular State was that the pendency of a class action did not toll the statute of limitations as to unnamed class members, there seems little question but that the federal rule of American Pipe would nonetheless be applicable.").

**13** We do recognize, however, that the equitable tolling rule established in American Pipe was justified on the basis of many of the same policies that also underlie Rule 23.

14

we held, apparently applying federal law, that the statute of limitations on a diversity action in Virginia federal court could be equitably tolled during the pendency of that same action in another federal court, which was eventually dismissed. See id. at 527. In view of our foregoing analysis of the Supreme Court's intervening decisions in Chardon, Tomanio, and Walker, however, we doubt that the principle of Atkins can be extended to this case. Indeed, we note that one of our sister circuits has refused to apply the rule of Atkins on precisely the ground that it is inconsistent with Walker. See Cook v. G.D. Searle & Co., 759 F.2d 800, 804 (10th Cir. 1985).

In sum, we conclude that, under Erie and its progeny, Virginia's rule against equitable tolling, rather than the federal rule articulated in American Pipe, would apply in this case, and therefore affirm the district court's grant of summary judgment against appellants on the ground that the Virginia statute of limitations had run.

CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED

15