# JOAN MAZUREK *v.* TOWN OF EAST HAVEN
## (AC 27208)

DiPentima, Lavine and Dupont, Js.

Argued December 5, 2006—officially released March 6, 2007

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant (plaintiff).

*Nancy F. Myers*, with whom, on the brief, was *Hugh F. Keefe*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, Joan Mazurek, appeals from the judgment rendered in favor of the defendant, the town of East Haven (town), following the jury verdict in this negligence action. Specifically, the plaintiff claims that the trial court improperly (1) denied her request to present an engineer's report pursuant to General Statutes § 52-174 (a) (2) and (2) denied her request for a continuance. The defendant argues that the judgment following the verdict should be affirmed or, in the alternative, the case should be dismissed on the ground of governmental immunity. We affirm the judgment of the trial court.

The plaintiff was injured while departing from a birthday party held at the Foxon volunteer firehouse in East Haven in December, 1997. The Foxon volunteer fire department leases its hall to private individuals to help defray the cost of maintaining the property. The defendant acknowledges that it owned and had control over the property at the time of the injury. While departing, the plaintiff stepped out on a platform that led to the

parking lot. The plaintiff stepped off the platform, intending to step directly onto the pavement of the parking lot. In stepping, she "didn't notice the stairs" between the platform and the parking lot's surface. When her foot went farther down than she had anticipated, the plaintiff began to fall. A bystander broke her fall, but during the incident she allegedly injured her ankle.

The court denied the town's motion for summary judgment in which the town argued that it was shielded from any potential liability by the doctrine of governmental immunity. The court also denied the plaintiff's request for permission to introduce an expert engineer's report and a motion for a continuance in the alternative, sought on the day the trial was to begin, after the jury had been picked. The case went to trial, and the jury returned a verdict in favor of the defendant. There were no objections to the jury charge or to the interrogatories submitted to the jury. The first interrogatory asked: "Do you find that the condition of the area of the plaintiff's fall was unreasonably dangerous?" The jury answered "no." The jury was instructed that "[i]f the answer to [i]nterrogatory [number one] is 'No,' then stop deliberations and return a verdict for the defendant," which the jury did. Additional facts will be provided as needed.

I

Connecticut's law of governmental immunity has most recently been reviewed by our Supreme Court in *Considine* v. *Waterbury*, 279 Conn. 830, 905 A.2d 70 (2006). The exceptions to the modern law of governmental immunity are codified as General Statutes § 52-557n.[1] See *Considine* v. *Waterbury*, supra, 844. The

---

[1] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecunuary benefit . . . ."

first inquiry in determining whether the municipality is shielded from liability by the doctrine is whether the municipality was engaged in a proprietary or governmental function. See id., 835–36. When the municipality is engaged in proprietary conduct, it "is not clothed with [the state's] immunities and is liable to be sued for injuries inflicted through its negligence in the performance of such an act." (Internal quotation marks omitted.) Id., 842.

"In determining whether a municipality's activity was proprietary in nature, this court, along with those of other jurisdictions, has examined whether the activity generated a *special corporate benefit* or *pecuniary profit* inuring to the municipality." (Emphasis in original; internal quotation marks omitted.) Id. Our Supreme Court has noted: "In the specific context of leasing municipal property, this court and courts of other jurisdictions generally have concluded that a municipality acts in its proprietary capacity when it leases municipal property to private individuals." Id., 849.

In *Considine*, the defendant city operated a municipal golf course. Id., 833. It rented a clubhouse located on the property to an entity operating a restaurant but retained responsibility for maintaining the common areas of the clubhouse that permitted public access to the clubhouse and the restaurant. Id. The city reinvested the restaurant's rent money into maintaining the golf course. See id., 851. The plaintiff was injured while waiting in the common area leading to the restaurant. While waiting for a friend, the plaintiff lost his balance and fell through a glass window panel, injuring himself. Id., 833–34. Our Supreme Court affirmed the trial court's determination that governmental immunity did not

attach because the city was conducting a proprietary and not a governmental function. Id., 850. The court first noted that the facts before it were similar to the fact patterns of previous cases in which it and other courts had held that the activity was proprietary and not governmental. The court also reasoned that there was a "pecuniary profit" because the city reinvested the money it made from the premises back into the premises, defraying its cost of maintenance, thereby yielding the town a "pecuniary benefit." Id., 851.

We also look for guidance to *Wood* v. *Oxford*, 290 Mass. 388, 195 N.E. 321 (1935), a case approvingly cited by the *Considine* court when reviewing the distinction between proprietary and governmental functions. See *Considine* v. *Waterbury*, supra, 279 Conn. 849. In *Wood*, the plaintiff alleged that she was injured when snow and ice, falling from the roof of the town hall from which she was exiting, struck her in the head. *Wood* v. *Oxford*, supra, 388. The defendant municipality rented the town hall to private individuals for "moving pictures, private, commercial and other purposes," and the defendant was departing from one of these private gatherings at the time of the injury. Id., 389. After noting that "[t]he circumstance that in the case at bar the revenue was obtained from use by the occupants from night to night and not by lease is immaterial in the application of the governing principle," the *Wood* court found that the town was not shielded by governmental immunity. Id., 391.

Here, the defendant rented the property to private individuals in order to raise revenue to help defray the costs of maintaining the firehouse. This case falls within the parameters of *Considine* and *Wood*, and, thus, the

activity constitutes a proprietary and not a governmental function.

The defendant argues additionally that the fact that the injury occurred on the steps leading to the firehouse, rather than in the hall where the party was held, creates an independent ground for immunity, as maintenance of the steps, a public access to the firehouse, is a governmental function. Further, the defendant claims, the plaintiff cannot prevail because she was required to seek damages pursuant to the provisions of General Statutes § 13a-149, the municipal highway defect statute, which requires the plaintiff to give notice to the defendant within a specified period of time, which the plaintiff did not do.[2]

The resolution of these arguments is also governed by *Considine*. Our Supreme Court has stated that it is not the location but the activity that determines the applicability of governmental immunity. *Considine* v. *Waterbury*, supra, 279 Conn. 853. As in *Considine*, the injury here occurred while the plaintiff was in a common area, through which she could access the private gathering. See id., 833. The plaintiff was not required to satisfy the procedures of § 13a-149 because the statute has no applicability to this case. The maintenance of roads for the public benefit is a governmental activity, and, as described previously, the defendant here was engaged in a proprietary and not a governmental act. We conclude that the defendant was not shielded by the doctrine of governmental immunity in this case.

## II

The plaintiff claims that the court improperly denied her request to admit into evidence an expert engineer's report. The plaintiff argues that the court found that

[2] General Statutes § 13a-149 provides a limited exception to the doctrine of governmental immunity, allowing recovery of damages from towns and cities for injuries due to defective roads. See *Prato* v. *New Haven*, 246 Conn. 638, 641–43, 717 A.2d 1216 (1998).

the statutory requirements of § 52-174 (a) were fulfilled[3] and that the court's refusal to admit the evidence was harmful. We disagree.

To receive a new trial, as the plaintiff seeks here, on the ground of improper exclusion of evidence, the plaintiff must demonstrate that the evidence should not have been excluded and that the ruling was harmful. *Meek* v. *Wal-Mart Stores, Inc.*, 72 Conn. App. 467, 495, 806 A.2d 546, cert. denied, 262 Conn. 912, 810 A.2d 278 (2002). To demonstrate that the ruling was harmful, an aggrieved party must show that, were the ruling otherwise, the outcome of the trial likely would have been different. Id., 495–96.

No appellate court has yet reviewed the words of § 52-174 (a) that require the party "desiring to offer into evidence" the report of a professional engineer to "apply . . . for permission to introduce the evidence" to determine if the report must be introduced, as a matter of law, once the court has found the disability as required by the statute or if the court may exercise its discretion. Discretion is implied by the use of the words "apply . . . for permission . . . ." The last sentence of the statute, however, states that "[u]pon the court finding that the person is so disabled, the matters shall be admissible in evidence as a business entry . . . ." This latter language may imply that the court must admit the evidence once the statute is satisfied.

---

[3] The relevant language of General Statutes § 52-174 (a) provides: "In all actions for the recovery of damages for personal injuries . . . (2) if a . . . professional engineer . . . is physically or mentally disabled at the time of the trial of the action to such an extent that such person is no longer actively engaged in the practice of the profession, the party desiring to offer into evidence . . . the reports and scale drawings of the professional engineer . . . concerning matter relevant to the circumstances under which the injuries or death was sustained shall apply to the court in which the action is pending for permission to introduce the evidence. . . . The court . . . shall determine whether the person is disabled to the extent that the person cannot testify in person in the action. Upon the court finding that the person is so disabled, the matters shall be admissible in evidence as a business entry in accordance with the provisions of section 52-180 when offered by any party in the trial of the action."

In this case, the court noted that the statute required a finding that the professional engineer was physically disabled to such an extent that he is "no longer actively engaged in the practice of his profession" and that the court, therefore, needed evidence with respect to the condition of the engineer. The court stated that a proposed witness, a fellow engineer at the same office as the hospitalized engineer who made the report, was not qualified to testify as to the medical condition of the author of the report. The witness stated that the absent engineer had had quadruple bypass surgery and was sixty-seven years old, but the witness was not sure "whether he'll be back." The court noted that it had to make a "preliminary finding with respect to disability . . . as referred to in the statute." The court never explicitly made a finding as required by the statute but stated that "an appropriate exercise of my discretion leans in the direction of denying the motion for the admission."

Thus, the court believed that it was authorized to exercise its discretion when it denied the plaintiff "permission to introduce the evidence. . . ." General Statutes § 52-174 (a) (2). We need not decide in this case whether § 52-174 (a) (2) provides that admission of the report is mandatory as a matter of law once the predicate disability has been found or remains discretionary, even if the court has found the disability, as required by the statute. In this case, insufficient evidence was offered to establish the predicate for admission, namely, that the professional engineer was physically disabled "to such an extent that such person is no longer actively engaged in the practice of the profession . . . ."[4] General Statutes § 52-174 (a) (2). The predicate for admission of the report was lacking, and, therefore, the court was correct in denying its admission into evidence.

---

[4] We note that this phrase also has not been subject to appellate review. Because of our determination, we need not determine the extent of the expert's disability that is required to come within the scope of the statute.

Even if the predicate for admission had been found by the court[5] and the court had incorrectly exercised its discretion to exclude the introduction of the report, the plaintiff would have to show that the ruling was harmful in order to obtain a new trial.

To determine whether the jury likely would have returned a different verdict had the evidence been admitted, we begin by considering the interrogatory submitted to the jury. The interrogatory asked whether it found "that the condition of the area of the plaintiff's fall was unreasonably dangerous" at the time of the plaintiff's injury. The jury answered "no."

We next consider the arguments and evidence the plaintiff presented to the jury as to what was claimed to be unreasonably dangerous about the steps. We do so in order to determine whether the evidence as submitted, if it had been modified or added to by the report, would likely have led to a different verdict. Her complaint alleged the dangerous condition of the steps to be the difference in riser heights of the steps, the lack of handrails, the lack of color contrast between the two steps and the sidewalk below, and inadequate lighting. The plaintiff alleged an injury to her left ankle. In closing argument, the plaintiff's counsel stated: "The claim is . . . basically, there are differences in risers, lighting, absence of handrails, and [in] a photograph that we have in evidence here, you can see the difference in risers, and this picture, which is exhibit G1, [shows that] when you're walking out in dimly lit—and that's

---

[5] Although the first sentence of the statute refers to disability to such an extent that the person "is no longer actively engaged in the practice of the profession," the second sentence states only that the court shall determine "whether the person is disabled to the extent that the person cannot testify in person in the action. . . ." General Statutes § 52-174 (a) (2). It is not certain whether the finding referred to in the second sentence refers to the fact that the person cannot testify in person because he is no longer actively engaged in the practice of the profession or because of some other degree of physical disability.

the testimony from the plaintiff as well as her husband, that you can't . . . make out . . . the distinction in the steps."[6]

Most importantly, the jury heard the plaintiff testify about her version of the fall. "Well, I was walking out the door, I don't know if it was open or not because it was cold that night, so there were double doors, and I don't know if I had to open the door, but I walked out and my impression, number one, is that as you look out it just—it's all concrete, and looking down, you'd— I really didn't notice the stairs, it just looked all level. So, I just walked normally, and all of a sudden I—my left foot just went out like into the air and I realized then, you know, there was—the stair was there. And I think the edge of my heel—when I stepped over them, not realizing they were there, [the edge of my heel] must have caught it and it just—my foot just went right over."

The two page report of the professional engineer, which was excluded, was written after a daytime inspection of the premises six months after the incident. It included the following relevant facts: The injury occurred in the evening; there was a light fixture above the steps illuminating the walkway; the space between the platform and the step and the step and the side walk were not uniform; there were no handrails; and the tread depth of the step was 11.5 inches. The report concluded that the steps did not conform to "Connecticut['s] Basic Building Code,"[7] although they were constructed before the code was in effect, and records the

---

[6] The plaintiff admitted on cross-examination, after previously testifying that she had never suffered injury to her ankles before, that she had brought a prior lawsuit in 1989 for a crash involving her golf cart, at which time she injured her left ankle, and another lawsuit in 1994 alleging injuries to her face and neck, back and knees arising from an automobile accident.

[7] Although the building code did not apply to the premises, it was some evidence the jury could have considered in determining whether the stairs were unreasonably dangerous on the night of the injury, but it is not evidence of negligence per se. See *Considine* v. *Waterbury,* supra, 279 Conn. 855.

opinion of the expert that the steps were "hazardous . . . ." Attached to the report were three photographs of the steps and one of the lighting fixture above the steps.

There was ample evidence before the jury regarding the lighting of the steps on the night of the injury. Both the plaintiff and her husband, who accompanied her to the firehouse that night, testified about the amount of light illuminating the steps. A former chief of the firehouse also testified about the general lighting conditions at the firehouse. The jury also heard testimony that there was a light fixture over the steps and that there were additional lights in the nearby parking lot. The jurors were given numerous photographs of the area from which they could observe the condition of the steps and the absence of a handrail alongside the steps. The jury also was presented with evidence showing the step height irregularities, tread depth and absence of a handrail. The jury had evidence that the plaintiff arrived at the premises at approximately 7 p.m. in December, 1997, and left at about 8:30 p.m., at which times it was dark, and that the plaintiff had entered the premises via the steps, presumably without incident.

The jury's determination of whether the steps were "unreasonably dangerous" was a determination that it could make on the basis of its knowledge and experience, given the evidence it did receive. When that is so, expert testimony is not necessary. See *State* v. *McNally*, 39 Conn. App. 419, 424, 665 A.2d 137, cert. denied, 235 Conn. 931, 667 A.2d 1269 (1995). Unlike complicated medical procedures or the functions of highly specialized mechanical or electrical products, the jurors can be assumed to have everyday experience with steps.

We conclude that, regardless of whether the court's determination to exclude the report was correct or not,

the exclusion did not harm the plaintiff, and the plaintiff is not entitled to a new trial because of the exclusion. The plaintiff has not demonstrated that the outcome of the trial likely would have been different if the report had been admitted into evidence.

### III

The plaintiff also claims that the court abused its discretion in denying her request for a continuance. The plaintiff requested the continuance as an alternative to her request to admit the previously described engineer's report. The plaintiff argues that the court relied solely on the age of the case when denying the plaintiff's motion for a continuance. We disagree with the plaintiff's characterization of the court's reasons for denying the motion and also conclude that the court did not abuse its discretion.

Because of the relationship between the request to admit the expert's report and the motion for a continuance, the court incorporated its reasoning for denying permission to introduce the report into its reasoning for denying the motion.

"The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made." (Citation omitted; internal quotation marks omitted.) *State* v. *Hamilton*, 228 Conn. 234, 239–40, 636 A.2d 760 (1994). "We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Internal quotation marks omitted.) *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 756, 785 A.2d 588 (2001). "[W]e consistently have acknowledged that [o]ur role as an appellate court is not to substitute our

judgment for that of a trial court that has chosen one of many possible alternatives" in considering a motion for a continuance. (Internal quotation marks omitted.) *State* v. *Rivera,* 268 Conn. 351, 378, 844 A.2d 191 (2004).

Our Supreme Court has catalogued a nonexhaustive list of relevant factors that courts frequently consider when determining whether to grant a motion for a continuance. Courts "have considered matters such as: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . ." *State* v. *Hamilton,* supra, 228 Conn. 240. Although the court need not consider all of these factors in every case, and may consider factors not previously enumerated, the *Hamilton* catalog provides a useful framework in which to consider the court's exercise of its discretion.

The court considered the timeliness of the request. The motion was made Monday morning, the day the evidence before the jury was to commence. The court noted that the plaintiff could have brought the matter of the expert's hospitalization to the court's attention on the previous Friday.[8] The court was provided with no evidence as to the likely length of the delay to be caused by the continuance. Although the plaintiff's counsel suggested that the trial could begin December 20, 2005, roughly one month after the scheduled November 21, 2005 commencement date, counsel presented no competent evidence that the expert would be ready

---

[8] The plaintiff's counsel represented to the court during argument on the motion that he may have learned of the expert's condition on the previous Wednesday or Thursday evening.

to testify in court or at a deposition by the end of December or at all. The court considered the age and complexity of the case. The court noted that the case had been going for "several years" and that at the time of the hearing on the motion, it had been eight years since the plaintiff's injury. The court also specifically noted that the case was not particularly complicated and that the expert testimony was not essential to the case. The court stated that the plaintiff's argument that the steps were unreasonably dangerous was a matter "to which laymen can testify, and the jury could evaluate those elements of the condition for the purpose of determining whether it was . . . not reasonably safe." The court could consider the representation of the defendant's counsel that he would not be available at the time the plaintiff's counsel proposed to resume the trial. Finally, the court considered the potential harm to the plaintiff by not granting the continuance. The court determined that the expert was not necessary to the plaintiff's case, that the plaintiff could otherwise provide the relevant facts, that the jury could understand the issue without the aid of an expert and that the expert's testimony would likely be accorded only limited weight because he did not make his inspection until several months after the incident.

We conclude that the court adequately considered the plaintiff's motion for a continuance and that the denial of the motion was not an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.