MICHAEL RICHEY ET AL. *v.* MAIN STREET STAFFORD, LLC, ET AL.
(AC 28241)
(AC 29021)

Flynn, C. J., and Beach and Borden, Js.

Argued March 26—officially released September 16, 2008

*Robert Shluger*, for the appellants (plaintiffs).

*Robert D. Swartout*, for the appellees (defendants).

*Opinion*

BORDEN, J. The plaintiffs, Michael Richey and Patricia Richey, appeal from the judgments of the trial court. The court rendered judgments in favor of the plaintiffs against two of the defendants, Brett Colon and Main Street Stafford, LLC (Main Street), following a hearing in damages after these two defendants were defaulted for failure to plead and in favor of the third defendant, Debra A. Colon, following a trial to the court that was consolidated with the hearing in damages against the other two defendants. On appeal, the plaintiffs claim that the court improperly (1) granted defendant Debra Colon's motion to open the default judgment against her, (2) failed to award adequate monetary damages

against the two defaulting defendants and (3) admitted certain evidence presented by the defaulted defendants at the hearing in damages. We reverse in part the judgments of the trial court.

On April 22, 2003, the plaintiffs initially filed a one count complaint against Main Street and Brett Colon, alleging, in substance, that those two defendants had engaged in an illegal entry and detainer of certain premises leased by those two defendants to the plaintiffs. The plaintiffs requested the court to issue a writ of restitution. On April 30, 2003, the court, *Graziani, J.*, granted the writ and ordered that possession of the premises be returned to the plaintiffs and that their personal property be restored. The court did not determine the issue of damages at that time.

On November 20, 2003, the plaintiffs filed a second complaint against the defendants, this time adding Debra Colon as a defendant. This complaint contained seven counts. The first three counts alleged an illegal entry and detainer committed by the three defendants and also alleged various items of damages arising therefrom. The fourth count alleged that the defendants, in committing the entry and detainer, violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The fifth and sixth counts alleged, respectively, intentional infliction of emotional distress and negligent infliction of emotional distress suffered by Patricia Richey. Finally, the seventh count alleged civil theft, asserting that all three defendants had failed to return items of the plaintiffs' personal property. The plaintiffs requested an award of damages, the return of their property and that the first and second complaints be consolidated. The defendants failed to plead timely, and the plaintiffs' motion for default against all three defendants on the second complaint was granted on April 7, 2004.

On March 23, 2005, Debra Colon filed a motion to open the default entered against her. The court granted the motion. Thereafter, the court held a consolidated trial as to Debra Colon and a hearing in damages as to Brett Colon and Main Street. The court issued a memorandum of decision as to Debra Colon, in which it found that the plaintiffs had failed to demonstrate that Debra Colon was liable for any of the counts. Neither of the defaulted defendants had filed a notice of intent to present defenses. As to these defendants, the court subsequently issued a separate memorandum of decision.

In that later memorandum of decision, the court found the following facts based on the factual allegations in the complaint that were accepted as true because of the default as well as on the hearing in damages, as relevant to the plaintiffs' appeals. "In 2002, the plaintiffs had commenced operation of a restaurant, called 'Eagle One Restaurant,' at 69 Main Street in Stafford, Connecticut, serving breakfast and lunch. After several months, they decided to relocate the restaurant to another location, about one block down the street and in the same town, in premises owned by the defendants. In October, 2002, the plaintiffs took possession of those premises, the address of which is 35-37 Main Street, to begin preparation of the space for operation out of that location. . . . [A disagreement ensued between the plaintiffs and the defendants regarding the plaintiffs' continued possession of the leased premises.] Rather than avail himself of a remedy under the law at the time, through summary process, [Brett Colon] took the matter into his own hands. On Sunday night, April 13, 2003, or in the early morning hours of Monday, April 14, he changed the locks on the property, precluding the plaintiffs from being able to enter the premises."

After the hearing in damages, the court made the following findings regarding the damages claimed against the two defaulted defendants. The court organized the plaintiffs' claimed items of damages arising from the entry and detainer into eight categories: food items; stolen items; restoration of material and labor costs; loss of profit for Eagle One Restaurant; lost business to a trucking company operated by Michael Richey; lost revenue from the sale of a product invented by Michael Richey; attorney's fees; and other damages. Before specifically addressing the plaintiffs' evidence regarding damages, the court noted that it found the testimony of both plaintiffs to be inconsistent, contradictory and generally lacking in credibility. The court then addressed the various categories of claimed damages.

Concerning the food items, the plaintiffs claimed that they had already stored food for the restaurant at the premises at the time of the lockout and, as a result of the lockout, the food spoiled. The court found that the plaintiffs had stored "freezers packed with food, and items such as eggs in the walk-in cooler [and] other highly perishable items such as milk, tomatoes, lettuce, etc." The court also noted that the plaintiffs were required by law to dispose of the food because it was not in their continuous possession before sale, raising the possibility of contamination. The court did not credit the plaintiffs' testimony regarding the amount of food on the premises, but it did credit an inventory supplied by the plaintiffs and from that calculated that the spoiled food had a value of $1853.92.

Concerning stolen items, the plaintiffs claimed that various items had been stolen from their restaurant, as well as from another business, Bigfoot-Lightfoot Industries, LLC, which the plaintiffs also operated from the premises. The court reviewed a list of claimed stolen and damaged items supplied by the plaintiffs regarding

the restaurant property. The court did not credit the list regarding the claimed stolen items, and found that the claimed damaged items, a stove and several plants, were not damaged. Regarding stolen items related to Bigfoot-Lightfoot Industries, LLC, the court did not credit the only evidence supplied by the plaintiffs, namely, Michael Richey's testimony that several items were missing, and therefore concluded that "the evidence does not establish that the plaintiffs suffered this loss."

Concerning the restoration of material and labor costs, the court noted that although the plaintiffs claimed that several individuals had supplied services to renovate the premises before the lockout, "there are no copies of checks provided, no W-2s or other tax information documenting payment to these individuals for the labor they allegedly provided, and [other than a receipt for plumbing for $526.82] there are no records provided for the materials used in the renovations." The court concluded that it was unable to calculate an award for damages for this item.

Concerning lost profit for Eagle One Restaurant, the plaintiffs' trucking company and sale of products from Bigfoot-Lightfoot Industries, LLC, the court determined that it was unable to calculate damages related to the restaurant's lost profit, as discussed in part III. Regarding lost profit from the trucking company, the plaintiffs claimed that the only set of keys to their commercial truck was locked in the premises. The court noted that the plaintiffs "did not present any contracts reflecting lost opportunities or any other proof of just what business [they claim] to have lost; however, [Michael Richey] asserts that he did lose income for the period and poses a figure of lost profit in the amount of $10,400. At that rate, [Michael Richey] would have to have been clearing $135,200 per year on his trucking business. The 2002 tax return, however, reflects $37,485 in gross

income for 2002 and $56,049 in expenses, resulting in a net loss for that year in the amount of $18,564." The court concluded that the plaintiffs had provided no credible evidence of lost revenue from their trucking company. Regarding the claimed lost profit from Bigfoot-Lightfoot Industries, LLC, the court noted that the product produced by the company had been recently invented by Michael Richey and that there was no evidence from which the court could have determined the probable monetary value of the product.

Concerning attorney's fees and other damages, the court also awarded attorney's fees, as we will discuss, and damages of $100 on the basis of the defendants' failure to comply with a previously issued court order to put the plaintiffs back in possession of the premises. Finally, the court summarily found that there was no evidence of any missing items belonging to a third party, Stephen Smith, as alleged by the plaintiffs.

The court did not make findings as to the damages claimed in the fourth count, the CUTPA claim, as discussed in part II B. It did not find sufficient evidence from which it could have calculated damages for the fifth and sixth counts, the emotional distress claims, as discussed in parts II C. Finally, it did not award any damages pursuant to the seventh count, which alleged civil theft. Because the court had found that the plaintiffs failed to demonstrate that any property was actually stolen, it concluded that "the value of the stolen property is determined to be '0' [and] trebling of that amount gives us the same figure."

The court rendered judgment in favor of the plaintiffs against the defaulted defendants in the amount of $7407.84. Specifically, the court awarded: $3707.84 in damages on the entry and detainer counts and $3500 for attorney's fees; no award for the CUTPA claim;

nominal damages in the amount of $100 for the emotional distress claims; and no award for the civil theft claim. Additionally, the court awarded the plaintiffs nominal damages in the amount of $100 on the basis of the defendants' violation of the previous court order directing them to put the plaintiffs back in possession of the premises. The plaintiffs then filed a motion to correct, which the court granted in part. As a result, the court increased the amount of attorney's fees awarded and issued an amended memorandum of decision, in which it rendered judgment for the plaintiffs in the amount of $17,762.84. These appeals followed.

I

The plaintiffs first claim that the court abused its discretion in opening the default judgment entered against Debra Colon. The defendants, in opposition, argue that this claim is moot because of the court's subsequent determination that the plaintiffs failed to demonstrate liability on the part of Debra Colon.

Debra Colon filed a motion to open the default on March 23, 2005. In it, she alleged that she had not received notice that there was a motion for default pending and that she did not otherwise know of the motion, in part because of the procedural complexity of the case. She also alleged that she was not given notice of the subsequent entry of default and that she had a valid defense to the merits of the plaintiffs' claims. The court granted the motion. Subsequently, the court determined that the plaintiffs failed to establish that Debra Colon was liable for the entry and detainer or any of the related counts in the plaintiffs' second complaint and rendered judgment in her favor.

Although the defendants have not provided any legal authority supporting their assertion that the plaintiffs' claim is moot, we determine this issue first because mootness involves our subject matter jurisdiction to

hear an appeal. See *In re William D.*, 97 Conn. App. 600, 603–604, 905 A.2d 696 (2006), aff'd, 284 Conn. 305, 933 A.2d 1147 (2007).

The defendants' argument rests on the assertion that the court, pursuant to a hearing in damages against a defaulted defendant, may ignore the usual legal effect of the default judgment, i.e., that liability is admitted and conclusively established on all adequately pleaded causes of action, if it determines that there is no evidence that would have supported the claim had the defaulting parties contested it. Case law makes clear, however, that once the defendants had been defaulted and had failed to file a notice of intent to present defenses, they, by operation of law, were deemed to have admitted to all the essential elements in the claim and would not be allowed to contest liability at the hearing in damages. See Practice Book §§ 17-35 and 17-37; *Whitaker v. Taylor*, 99 Conn. App. 719, 725–27, 916 A.2d 834 (2007). Therefore, were we to conclude that the motion to set aside the default was granted improperly, the court on remand would be required to find liability against Debra Colon, provided the counts against her were adequately pleaded, and proceed to determine the amount of damages. Therefore, this claim is not moot.

The plaintiffs claim that the court abused its discretion in granting the motion to open the default. Specifically, they argue that Debra Colon failed to show cause why the default should be opened, filed her motion to open seven months after default had entered, was represented by an attorney and should have known about the motion for default. We review the court's grant of a motion to open only to determine whether the court abused its discretion. *Skyler Ltd. Partnership v. S.P. Douthett & Co.*, 18 Conn. App. 245, 248–49, 557 A.2d 927, cert. denied, 212 Conn. 802, 560 A.2d 984 (1989). It is the appellant's burden to provide a record

that is adequate for us to review the claimed abuse of discretion. See *1525 Highland Associates, LLC* v. *Fohl*, 62 Conn. App. 612, 624, 772 A.2d 1128, cert. denied, 256 Conn. 919, 774 A.2d 137 (2001).

The plaintiffs have not presented us with a memorandum of decision regarding the issue. They did not request that the court articulate its decision to grant the motion. It is unclear whether there was oral argument, and no transcripts appear in the record regarding any such argument. On the record before us, we are unable to conclude that the court abused its discretion when it granted the motion to open.

II

The plaintiffs next claim that the court failed to award an adequate amount of monetary damages. Specifically, they argue that the court improperly (1) awarded no monetary damages for certain items of damage claimed by them, (2) failed to award any damages pursuant to their claim of a violation of CUTPA and (3) failed to award more than nominal damages for their emotional distress claims. We agree in part.

"A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant. . . . If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations. . . . Therefore, the only issue before the court following a default is the determination of damages. . . . A plaintiff ordinarily is entitled to at least nominal damages following an entry of default against a defendant in a legal action. . . .

"It does not follow [however] that the plaintiff is entitled to a judgment for the full amount of the relief

claimed. The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive. . . .

"After a default, a defendant may still contest liability. Practice Book §§ 17-34, 17-35 and 17-37 delineate a defendant's right to contest liability in a hearing in damages after default. Unless the defendant provides the plaintiff written notice of any defenses [however] the defendant is foreclosed from contesting liability." (Citations omitted; internal quotation marks omitted.) *Whitaker* v. *Taylor*, supra, 99 Conn. App. 725–27.

We conduct a plenary review of the pleadings to determine whether they are sufficient to establish a cause of action upon default. Id., 727. We review other facts, which were not established by the pleadings, pursuant to the clearly erroneous standard of review. Id.

## A

The plaintiffs first argue that the court improperly failed to award them at least nominal damages for certain items of damages they claimed in their complaint. Specifically, the plaintiffs argue that the court "should have awarded nominal damages or greater for each and every element of damages pleaded in the complaint . . . ." We disagree.

None of the cases cited by the plaintiffs supports their assertion that the defaults entitled them to at least nominal damages for each item of damages claimed. In contrast to the plaintiffs' assertion, case law makes clear that after default by the defendants, the plaintiffs were entitled to at least nominal damages for each adequately pleaded *cause of action*, not every item of claimed damage. See *Whitaker* v. *Taylor*, supra, 99 Conn. App. 725 ("[a] default admits the material facts that constitute a cause of action" [internal quotation marks omitted]). Therefore, we reject this claim.

## B

The plaintiffs next argue that the court improperly failed to award them damages pursuant to their fourth count, which alleged a violation of CUTPA. We agree.

The plaintiffs alleged in their complaint that the defendants' commission of the illegal entry and detainer constituted an unfair trade practice. They further alleged that the defendants' conduct of locking the doors to the premises, in addition to the defendants' failure to put the plaintiffs back in possession despite a court order, made them liable for punitive damages. The court, after reviewing the evidence at the hearing in damages, declined to award any amount of damages, including nominal damages, on the plaintiffs' CUTPA claim because it determined that the plaintiffs had failed to prove that the defendants' conduct was reckless or wanton.

"A party seeking to recover damages under CUTPA must meet two threshold requirements. First, [the party] must establish that the conduct at issue constitutes an unfair or deceptive trade practice. . . . Second, [the party] must [allege facts] providing the court with a basis for a reasonable estimate of the damages suffered. . . .

"Once a violation of CUTPA has been established, evidence that the defendant has acted with reckless indifference to the rights of the plaintiff or has committed an intentional and wanton violation of those rights is a necessary prerequisite to the award of punitive damages." (Citation omitted; internal quotation marks omitted.) Id., 733.

The plaintiffs' fourth count incorporated by reference all of the prior allegations relating to the alleged unlawful entry and detainer. Taken as true because of the defaults, the allegations that the defendants changed

the locks to the premises early one morning "for the purpose of putting the plaintiffs out of their possession," kept the plaintiffs out of possession despite repeated requests for the return of possession of the premises and continued to keep the plaintiffs out of possession after a court issued a writ of restitution are sufficient to establish liability for the purpose of awarding punitive damages pursuant to CUTPA.

The defendants argue, however, that the award of punitive damages is discretionary with the court, and, therefore, the plaintiffs are not entitled to any award at all pursuant to CUTPA, including nominal damages. This court has recently reiterated that when a CUTPA violation is sufficiently pleaded, including allegations that demonstrate reckless and wanton behavior to support a punitive damages award, a plaintiff is entitled to at least nominal damages after a default has entered against the defendant and no defenses have been properly raised. See *Whitaker* v. *Taylor*, supra, 99 Conn. App. 734. Therefore, we conclude that the court improperly failed to award at least nominal damages to the plaintiffs on the CUTPA count.

We next consider the proper remedy. Our Supreme Court has long held that a new trial should not be granted when the court, on remand, is able to award only nominal damages. *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 504, 656 A.2d 1009 (1995); *Gold* v. *Ives*, 29 Conn. 119, 123 (1860) ("as a general rule, a new trial ought not to be granted merely to enable a party to recover nominal damages").

Here, because the court determined that the plaintiffs had not demonstrated wanton and reckless conduct, the court did not consider whether an award of punitive damages was appropriate. On remand, the court, although compelled to award at least nominal damages, is not restricted to awarding only nominal damages if

it determines, pursuant to the exercise of its discretion, that punitive damages are appropriate. Therefore, it is appropriate to remand this case for a new hearing in damages as to the CUTPA count.

## C

The plaintiffs' third argument relates to their counts that alleged negligent and intentional infliction of emotional distress. The plaintiffs argue that the court improperly considered other possible sources of Patricia Richey's distress and that its determination that they failed to present credible evidence as to the amount of damages suffered was clearly erroneous. We disagree.

The plaintiffs identify, in their appellate brief, three sources of evidence that they presented to the court regarding their emotional distress claim: Patricia Richey's testimony and two documents sent by Patricia Richey's physician to her attorney. The first document stated in relevant part: "Patricia Richey was under a great deal of stress as well as depression/anxiety due to the closing of her business and the repercussions that followed." The second document provided: "I believe with a reasonable degree of medical probability, that my patient, Patricia Richey's past and ongoing symptoms are connected to the closing of Patricia's restaurant business and the continuing financial circumstances that it brought about since April 2003."[1]

---

[1] This court has not been provided with these documents for review. The quoted language is provided by the plaintiffs in their appellate brief. The parties do not dispute that the quoted language appears in the original documents or that the documents were admitted as full exhibits at trial. Further, the plaintiffs' description of the contents of the documents is consistent with the description provided by the court in its memorandum of decision. Therefore, we may review this claim. See *Finch* v. *Earl*, 104 Conn. App. 515, 519 n.5, 935 A.2d 172 (2007); *Moss* v. *Foster*, 96 Conn. App. 369, 371 n.2, 900 A.2d 548 (2006); *Lisiewski* v. *Seidel*, 95 Conn. App. 696, 700 n.2, 899 A.2d 59 (2006).

The court provided three observations while considering these counts. First, it noted the absence of evidence demonstrating the amount of damages that Patricia Richey suffered. Specifically, it stated that there were no "medical or psychological treatment notes or reports reflecting symptoms, dates of complaints, dates and types of treatment or the status of the patient. . . . Nor have any billing statements been provided. There is no indication that there was any reference of [Patricia] Richey to another professional for these claimed problems, nor of any medication prescribed for these claimed afflictions." Second, the court examined other potential sources that may have caused Patricia Richey's distress. Third, it "significantly question[ed] whether this medical doctor . . . is qualified to offer his opinions as to the cause of the depression . . . ." After reviewing the evidence, the court concluded: "The court finds that there is *no credible evidence on which to premise a calculation of damages* for the negligent and intentional infliction of emotional distress and consequently orders nominal damages in the amount of $100." (Emphasis added.)

Although we agree with the plaintiffs that the court improperly considered that Patricia Richey's emotional distress may have been caused by other sources, because the default established liability for the distress, we do not agree that the court's award of nominal damages rested on these observations. The court clearly noted, while reciting the facts, that the plaintiffs had not provided any evidence from which the court could formulate a damages award. The plaintiffs failed to provide medical bills, medical reports or any evidence of types of treatments. The court did not find, as the plaintiffs assert, that the plaintiffs had failed to demonstrate causation. Instead, the court concluded, after reviewing the evidence related to damages, that the plaintiffs failed to provide evidence from which the court could

calculate a particular amount of damages deriving from the alleged distress.

We also disagree with the plaintiffs' argument that the court's conclusion that they failed to submit sufficient evidence proving the amount of damages was clearly erroneous. Even on appeal, the only items of evidence to which the plaintiffs refer in support of their argument that they proved damages are two documents written by a physician and Patricia Richey's testimony. The two documents contain only the physician's conclusion that the defendants' actions were the proximate cause of the distress and do not provide any guidance to determine a monetary value of the distress, and the court specifically found the testimony of both plaintiffs not to be credible. With no available evidence to guide the court to assign a monetary value to the distress suffered by Patricia Richey, it was not improper for the court to award nominal damages. This claim fails.

### III

The plaintiffs' final claim challenges certain testimony that the court admitted at the damages hearing. Specifically, the plaintiffs challenge the court's admission of testimony regarding the readiness of the restaurant to open for business, arguing that this testimony improperly allowed the court to consider other sources that may have caused the restaurant not to open when calculating damages for lost profit.

The plaintiffs cite three sets of questions and answers that they argue were impermissible. First, the defendants asked Michael Richey, during cross-examination: "So, did you need another inspection from the health department, though, before you opened?" The witness answered, "Yes." Second, the defendants further asked Michael Richey on cross-examination: "So, without all of that—without what you're telling me, you could not have opened the restaurant at any point in time—any

time in the foreseeable future. . . . I need to know why the restaurant wasn't opened." The witness replied: "Spoilage and the fact that [Brett Colon] served us an eviction notice." Third, the defendants asked Brett Colon during direct examination: "Did you know if the premises were going to be used for anything other than a restaurant?" He answered, "No."[2]

The court, in determining whether the plaintiffs had proved damages for lost profit as to their restaurant, noted that the plaintiffs' prior restaurant lost revenue and that the plaintiffs, in support of their claims for lost profit, provided no evidence other than their assertions that the new restaurant would be successful. The court also noted that the plaintiffs had not proved that the restaurant would have been ready to open even if the defendants did not commit an illegal entry and detainer. In conclusion, the court noted that it was "left with a significant question as to when and if the newly located Eagle One Restaurant would ever open; just what its business would be—dinner added to the menu? Liquor served? How successful would it be? How many employees would be necessary? What would the expenses be? Would profit eventually be realized? If so, what would it be?" It concluded: "The plaintiffs' projections are premised on too much dreamlike speculation, contrary to definitive evidence . . . both in terms of their prior experience and the lack of diligence in making the premises ready. The court cannot award theses damages as claimed."

---

[2] The plaintiffs provide no analysis explaining how this last piece of testimony is relevant to lost restaurant profits. Later in their appellate brief, the plaintiffs assert that the quoted testimony, among other things, allowed the court to find that "the defendants were unaware that [another business operated by the plaintiffs] had its offices in the premises." No further analysis of this challenged testimony is provided. To the extent that the plaintiffs raise a claim as to this last piece of testimony, we decline to review it, as it is briefed inadequately.

The plaintiffs claim that the evidence was submitted to establish a defense that the restaurant would not have opened for reasons other than the entry and detainer, and that the defendants were prohibited from demonstrating this defense by their failure to file notice that they had intended to present a defense. Regarding whether the admitted evidence caused them harm, the plaintiffs state in their appellate brief: "[The evidence was] harmful because [it] allowed the court to hear and consider testimony from defense witnesses that there were events other than the lockout and detainer which may have caused the restaurant to not open. . . . Such evidence led the court [to find] that the illegal lockout and detainer did not result in the plaintiffs' restaurant not opening, that it was not going to open at all, and that the plaintiffs themselves caused their own demise . . . ."

We assume, without deciding, that the evidence was admitted improperly to allow the defendants to demonstrate a defense to liability. Although, arguably, the court's determination was based in part on its consideration that the plaintiffs' actions, and not the defendants', were the true cause of the failure of the restaurant to open, the court also determined that the plaintiffs had failed to provide evidence from which it could calculate the restaurant's lost profits even if the defendants were responsible. The plaintiffs provide no analysis demonstrating how the challenged testimony had an impact on this determination. Furthermore, the court specifically found the plaintiffs not to be credible witnesses. Therefore, we conclude that the plaintiffs have failed to demonstrate that the evidentiary rulings, even if improper, harmed them. It is well settled that not every mistake committed during trial entitles the parties to a new trial. The appealing party must also demonstrate that the alleged mistake caused harm. See *Mazurek* v. *East Haven*, 99 Conn. App. 795, 801, 916 A.2d 90, cert. denied,

282 Conn. 908, 920 A.2d 1017 (2007). Because the plaintiffs have failed to demonstrate that they were harmed by the admission of the testimony, we reject this claim.

The judgment in the second case is reversed only as to the determination that the plaintiffs were not entitled to damages on their CUTPA claim and the case is remanded for a hearing in damages as to that claim. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.