## ABBOTT TERRACE HEALTH CENTER, INC. *v.* ANNA PARAWICH ET AL.
### (AC 31007)

Gruendel, Beach and Dupont, Js.

Argued December 8, 2009—officially released March 23, 2010

*Kari L. Olson,* with whom, on the brief, was *Kevin T. Hansted,* for the appellant (plaintiff).

*Opinion*

GRUENDEL, J. The plaintiff, Abbott Terrace Health Center, Inc., appeals from the judgment of the trial court in favor of the defendant William Hulstrunk, also known as William Hulstruck.[1] The plaintiff maintains that the court, following the entry of default against the defendant, improperly declined to impose liability thereon. We reverse in part the judgment of the trial court.

Our recitation of the relevant facts is governed by the procedural posture of this case. "The entry of a default constitutes an admission by the defendant of the truth of the facts alleged in the complaint." *DeBlasio* v. *Aetna Life & Casualty Co.*, 186 Conn. 398, 400, 441 A.2d 838 (1982). The complaint in the present case set forth the following facts. The plaintiff is a Connecticut corporation located at 44 Abbott Terrace in Waterbury and is licensed as a chronic and convalescing nursing home and rest home. On December 13, 2007, the defendant's aunt, Anna Parawich, acting through the defendant as her attorney in fact, transferred certain moneys in her bank accounts to the defendant. The very next day, Parawich entered the plaintiff nursing home to receive care and services for an indefinite period of time. She did so knowing that the plaintiff would bill

---

[1] Also named as a defendant was Hulstrunk's aunt, Anna Parawich. She died subsequent to the conclusion of proceedings before the trial court but before oral argument transpired in this court. By order dated November 18, 2009, this court stated that it had received notice that Parawich had died on August 1, 2009, but had not received notice of the substitution of a proper personal representative of her estate pursuant to General Statutes § 52-599. Consistent with General Statutes §§ 52-599 and 52-600, we ordered that oral argument proceed on December 8, 2009, without prejudice to the filing with this court of a motion to substitute the personal representative of the estate of Parawich on or before January 8, 2010. No such motion followed.

The present appeal concerns only the court's judgment in favor of Hulstrunk. We therefore refer in this opinion to Hulstrunk as the defendant and to Parawich by name.

her for the costs of the care and services provided, and she transferred the moneys on December 13, 2007, knowing that she would incur debt for the costs of care and services provided by the plaintiff and would be billed accordingly. That transfer of Parawich's assets rendered her unable to meet her financial obligations to the plaintiff. Further, Parawich conveyed those assets without adequate consideration and with the intent to avoid paying for her health care costs. In so doing, Parawich transferred her assets with actual intent to hinder, to delay and to defraud creditors. As her attorney in fact and the recipient of those assets, the defendant acted as a transferee, participant in and beneficiary of Parawich's fraudulent transfer, causing damages to the plaintiff.

On December 14, 2007, Parawich was admitted to the plaintiff home as a private, self-pay resident to receive twenty-four hour skilled nursing care and services. At all times during her stay, the plaintiff rendered skilled nursing care and services to Parawich. At the same time, the plaintiff did not receive full payment for the costs associated with those services. The principal amount due and owing to the plaintiff for services rendered to Parawich totaled $75,151.77. Despite demand by the plaintiff, Parawich failed to pay for the services provided to her by the plaintiff.

On February 18, 2008, Parawich, through the defendant, her attorney in fact, executed an admissions agreement (agreement). Pursuant thereto, Parawich was obligated to pay the plaintiff for the costs of skilled nursing care and services rendered, including the basic daily rate and any ancillary charges. In addition, the agreement provided that the plaintiff was entitled to collect interest at the prevailing rate on any overdue principal balance that was more than ninety days overdue. The agreement also entitled the plaintiff to recoup reasonable attorney's fees and all costs it incurred in

connection with any collection action on Parawich's account. Parawich breached that agreement, causing damage to the plaintiff.

At the time the agreement was entered into, the defendant, as Parawich's attorney in fact, represented to the plaintiff that he would comply with the terms of the agreement, including using Parawich's assets and income to pay the plaintiff and promptly applying for and cooperating with the department of social services (department) to establish Parawich's medicaid eligibility when her assets neared exhaustion. The defendant made those promises to the plaintiff with the expectation that the plaintiff would rely on them. Relying on the defendant's promises, the plaintiff rendered care and services to Parawich.

The defendant thereafter failed to respond to the department's requests for the information required to establish Parawich's medicaid eligibility. He further failed to use Parawich's assets and income to pay the plaintiff for the care and services it rendered to Parawich. As a result of the plaintiff's reliance on the defendant's promises, the plaintiff rendered care and services to Parawich, the costs for which it was not paid. The plaintiff thus was damaged by its reliance on the defendant's promises.

Accordingly, the plaintiff on September 19, 2008, filed an application for a prejudgment remedy against the defendant and Parawich that was accompanied by the affidavit of Darlene Fortier, the director of financial services for the plaintiff. The court held a hearing on the matter on October 21, 2008. Neither Parawich nor the defendant appeared at that hearing, at which the plaintiff introduced into evidence certain documents. Exhibit one, titled "application requirements list," under which was written "last notice," was a document prepared by the department to determine Parawich's

eligibility for long-term care assistance. That document was addressed to the defendant and requested, inter alia, a complete history of certain bank accounts. The department also requested verification of certain specified withdrawals. In particular, the department inquired as to the closure of a money market account at the Naugatuck Savings Bank on December 13, 2007, at which time the defendant withdrew $78,699.50. The department, in a notation next to that specified transaction, inquired "where did it go?" Exhibit two, titled "transfer of assets—preliminary decision notice," was also a document prepared by the department and addressed to the defendant. It stated in relevant part: "We reviewed the information that you gave us about the transfer of $78,699.50 on December 13, 2007. Our initial decision is that you made the transfer in order to be eligible for assistance. We made this decision because: You are applying for or receiving medical help for long-term care services or home care services; and you . . . transferred assets that affect eligibility; and you have not given us proof that the transfer was not made in order to be eligible for assistance. The purpose of this notice is to tell you about our preliminary decision and give you a chance to contact us before the decision becomes final. If you do not agree with us, you need to tell us. . . . If we do not hear from you by [August 18, 2008], we will act on our decision about the transfer." On the basis of the foregoing, the court on October 21, 2008, found that probable cause existed to conclude that a judgment "will be rendered . . . in favor of [the plaintiff]." The court granted the application for a prejudgment remedy "to the value of $81,516.83" and ordered that the plaintiff "may attach, garnish and/or otherwise encumber all real property owned by [Parawich and the defendant] individually or jointly [and] may attach and/or garnishee all bank accounts owned by [Parawich and the defendant] individually or jointly."

The plaintiff commenced the present action against the defendant and Parawich on October 24, 2008. Its complaint, the gist of which we already have recounted, consisted of five counts. Count one alleged breach of contract against Parawich. Count two alleged promissory estoppel against the defendant. The third count, alleging fraudulent conveyance, pertained to both the defendant and Parawich. The fourth and fifth counts, alleging quantum meruit and unjust enrichment, respectively, were directed at Parawich.

Neither the defendant nor Parawich filed an appearance or responded in any manner to the plaintiff's complaint. Accordingly, the plaintiff on November 24, 2008, filed a motion for default for failure to appear, which was granted on December 9, 2008. The plaintiff then filed a "motion for judgment based upon default," to which it attached an affidavit of debt and bill of costs. A certificate of closed pleadings was filed on January 12, 2009, at which time the plaintiff claimed the matter for a hearing in damages. At no time did the defendant respond to the plaintiff's action, never mind file a motion to set aside the default; see Practice Book § 17-42; or provide written notice of a defense to liability. See Practice Book §§ 17-34, 17-35 and 17-37.

On January 26, 2009, the court ordered as follows: "Please be advised that the . . . case has been assigned for a hearing in damages on [March 5, 2009]. Please report to the assigned courtroom at Waterbury Superior Court, 300 Grand Street. *If counsel files an affidavit of debt, attorney's fees, current military affidavit and order page, the matter may be taken on the papers.* All cases must file an order page with a breakdown of all monetary amounts." (Emphasis added.) Complying with that order, the plaintiff on March 5, 2009, filed with the court an updated affidavit of debt indicating that the principal amount due and owing to the plaintiff for care and services rendered

to Parawich was $102,815. The plaintiff further filed a military affidavit stating that neither the defendant nor Parawich currently were on active military duty. Finally, the plaintiff filed an affidavit of attorney's fees and costs, in which attorney Kevin T. Hansted attested to a total of $7523 in attorney's fees and $936.55 in costs arising from the present litigation.

By order dated March 5, 2009, the court rendered judgment against Parawich in the amount of $116,748.57. The court expressly found that said amount "is due the plaintiff from [Parawich] only." The court further stated that it "does not find [the defendant] liable."

On March 25, 2009, the plaintiff filed a motion to reargue. In that motion, the plaintiff stated that it "seeks reconsideration of the [court's] order [dated March 5, 2009] in that it states that 'the [c]ourt does not find [the defendant] liable.' " A memorandum of law and a copy of the court's March 5, 2009 order accompanied the motion, which the court denied. The court's judgment file provides: "This action, by writ and complaint, claiming money damages, came to this court on November 18, 2008, and thence to later dates when defaults were entered against [the defendant and Parawich] for failure to appear, and thence to later dates when the plaintiff filed a motion for judgment after default, and thence to later dates when the court considered the motion for judgment after default. The court finds that . . . Parawich is liable to the plaintiff for the principal amount of $102,815, plus interest of $5474.02, and attorney's fees of $7523, for a total of $115,612.02. Costs are taxed at $936.55. Whereupon, it is adjudged that judgment shall enter for the plaintiff against . . . Parawich . . . and judgment shall enter for the defendant . . . . The matter was continued thence to March 25, 2009, when the plaintiff filed a motion to reargue the

motion for judgment, which was denied." From that judgment, the plaintiff appeals.[2]

## I

On appeal, the plaintiff claims that the court improperly found the defendant not liable in light of the entry of default in its favor. At the outset, we note that this claim involves the interpretation and application of our rules of practice, which "presents a question of law over which this court's review is plenary." *State* v. *One or More Persons over Whom the Court's Jurisdiction Has Not Yet Been Invoked*, 107 Conn. App. 760, 764, 946 A.2d 896, cert. denied, 289 Conn. 912, 957 A.2d 880 (2008). On our plenary review, we agree with the plaintiff that the court improperly rendered judgment in favor of the defendant.

In the present case, the defendant was defaulted pursuant to Practice Book § 17-20 due to his failure to enter an appearance. As we recently observed, "[c]ase law makes clear . . . that once the defendants had been defaulted and had failed to file a notice of intent to present defenses, they, by operation of law, were deemed to have admitted to all the essential elements in the claim and would not be allowed to contest liability at the hearing in damages." *Richey* v. *Main Street Stafford, LLC*, 110 Conn. App. 209, 218, 954 A.2d 889 (2008); see also 1 E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 96, p. 282 ("[t]he entry of a default constitutes a technical admission by the defendant of the truth of the facts alleged in the complaint"). "A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, *conclusively determines the liability of a defendant*." (Emphasis added; internal quotation marks omitted.) *Schwartz* v. *Milazzo*, 84 Conn. App.

---

[2] The defendant has not filed an appearance or appellate brief in this appeal. Furthermore, he did not appear for oral argument thereon.

175, 178, 852 A.2d 847, cert. denied, 271 Conn. 942, 861 A.2d 515 (2004). Accordingly, "the entry of default against the defendant commands the rendering of judgment in favor of the plaintiff." *Peterson* v. *Woldeyohannes*, 111 Conn. App. 784, 791, 961 A.2d 475 (2008). Following the entry of a default, all that remains is for the plaintiff to prove the amount of damages to which it is entitled. *DeBlasio* v. *Aetna Life & Casualty Co.*, supra, 186 Conn. 401. At a minimum, the plaintiff in such instances is entitled to nominal damages. See id.; *Cardona* v. *Valentin*, 160 Conn. 18, 26, 273 A.2d 697 (1970).

As a consequence of the default, the defendant was bound by the material factual allegations set forth in the plaintiff's complaint. *Whitaker* v. *Taylor*, 99 Conn. App. 719, 727, 916 A.2d 834 (2007). We thus must examine those allegations to ascertain whether, as the plaintiff argues, they are sufficient on their face to establish a valid claim for the relief requested. Id.; see also *Richey* v. *Main Street Stafford, LLC*, supra, 110 Conn. App. 220. As the interpretation of pleadings is always a question of law for the court; *Grimes* v. *Housing Authority*, 242 Conn. 236, 249, 698 A.2d 302 (1997); our review is plenary.

A

The plaintiff's complaint contains two causes of action directed toward the defendant: promissory estoppel and fraudulent conveyance. We examine each in turn.

1

The second count of the plaintiff's complaint alleges a claim for promissory estoppel. Such a claim requires "proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to

believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 268, 690 A.2d 368 (1997); *Torringford Farms Assn., Inc.* v. *Torrington*, 75 Conn. App. 570, 576 n.8, 816 A.2d 736, cert. denied, 263 Conn. 924, 823 A.2d 1217 (2003). Paragraphs twelve through eighteen of the second count allege as follows. At the time the agreement was entered into, "[the defendant] represented to [the plaintiff] that he would comply with the terms of the agreement, including using Parawich's assets and income to pay [the plaintiff] and promptly applying for and cooperating with [the department] to establish [Parawich's] [m]edicaid eligibility when her assets neared exhaustion. [The defendant] made those promises to [the plaintiff] with the expectation that [the plaintiff] would rely on them. Relying on [the defendant's] promises, [the plaintiff] rendered care and services to Parawich. [The defendant thereafter] failed to promptly respond to [the department's] requests for the information required to establish Parawich's [m]edicaid eligibility. [The defendant] failed to use Parawich's assets and income to pay [the plaintiff] for the care and services it rendered to Parawich. As a result of [the plaintiff's] reliance on [the defendant's] promises, [the plaintiff] rendered care and services to Parawich, the costs for which it has not been paid. [The plaintiff] has been damaged by its reliance on [the defendant's] promises." We conclude that those allegations satisfy the threshold legal test to sustain a cause of action for promissory estoppel against the defendant. The court improperly refused to impose liability and to award the plaintiff damages on that count.

2

The third count of the plaintiff's complaint alleges fraudulent conveyance. "A party alleging a fraudulent

transfer or conveyance under the common law bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." (Internal quotation marks omitted.) *Certain Underwriters at Lloyd's, London* v. *Cooperman,* 289 Conn. 383, 394, 957 A.2d 836 (2008). Paragraphs twelve through twenty-one of the third count allege: "[O]n or about December 13, 2007, Parawich, through her [attorney in fact, the defendant], transferred certain [moneys] in her bank accounts to [the defendant]. Parawich entered [the plaintiff nursing home] on or about December 14, 2007, to receive care and services for an indefinite period of time. Parawich entered [the plaintiff nursing home] knowing that [the plaintiff] would bill her for the costs of the care and services provided to her. Parawich transferred the [moneys] knowing that she would incur debt for the costs of care and services [the plaintiff] provided to her. The transfer of Parawich's assets rendered her unable to meet her financial obligations to the plaintiff. Parawich transferred her assets knowing that she would need care and services from a nursing home for an indefinite period of time and that the nursing home would bill her for the costs of care and services provided. . . . Parawich conveyed assets without adequate consideration and with the intent to avoid paying for her health care costs . . . . Parawich transferred her assets with actual intent to hinder, delay and defraud creditors. [The defendant] acted as a transferee, participant and beneficiary in Parawich's fraudulent transfer. [The plaintiff] has been damaged." Those allegations state a valid cause of action for fraudulent conveyance against the defendant.[3] We thus conclude that

---

[3] The record does not indicate whether the court referred the matter to the state's attorney for possible criminal investigation.

the court improperly refused to impose liability and to award the plaintiff damages on that count as well.

## B

In light of the foregoing, the court's judgment in favor of the defendant is untenable. A default entered on December 9, 2008, after which the plaintiff claimed the matter for a hearing in damages on January 12, 2009. The material allegations of the plaintiff's complaint set forth two valid claims for the relief requested. As such, the defendant's liability to the plaintiff conclusively was established at that time, and the only issue before the court was the determination of damages. See *Bank of New York* v. *National Funding*, 97 Conn. App. 133, 138, 902 A.2d 1073, cert. denied, 280 Conn. 925, 908 A.2d 1087 (2006), cert. denied sub nom. *Reyad* v. *Bank of New York*, 549 U.S. 1265, 127 S. Ct. 1493, 167 L. Ed. 2d 229 (2007). We therefore conclude that the court improperly rendered judgment in favor of the defendant.

## II

In the present case, Connecticut law compels a judgment in favor of the plaintiff against the defendant. Nevertheless, it is not for this appellate tribunal to delve into the determination of the precise amount of damages to which the plaintiff is entitled. See *Bhatia* v. *Debek*, 287 Conn. 397, 419, 948 A.2d 1009 (2008) (determination of damages involves question of fact); *Weil* v. *Miller*, 185 Conn. 495, 502, 441 A.2d 142 (1981) (appellate courts "cannot find facts; that function is, according to our constitution, our statute, and our cases, exclusively assigned to the trial courts"). For that reason, we remand the matter to the trial court for a hearing in damages in accordance with this decision. In addition, we emphasize that the time for the defendant to contest liability and to disclose a defense has passed. See Practice Book § 17-35; *Schwartz* v. *Milazzo*, supra,

84 Conn. App. 178–79. The sole issue before the court is the proper determination of damages. *Whitaker* v. *Taylor*, supra, 99 Conn. App. 726. The plaintiff shall be permitted to present any relevant evidence at that hearing, including the exhibits introduced at the prejudgment remedy hearing.

The judgment is reversed only as to Hulstrunk and the case is remanded for a hearing in damages as to him only consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.